LEE *v.* GAYLORD.

1. WILLS—EVIDENCE—TESTIMONY OF SCRIVENER.
   The testimony of the scrivener may not be admitted to supply an omission, where it will effect a material change in the provisions of a will.

2. SAME.
   Where the testator, in a certain clause of his will, apparently intended to dispose of all of the residue of his estate, but in fact disposed of only one-half of it, the testimony of the scrivener as to the testator's intention in disposing of the other one-half and stating that he failed to follow instructions, is inadmissible.

3. SAME—PROPERTY UNDISPOSED OF BY WILL TREATED AS INTESTATE.
   Where the testator failed to dispose of one-half of the residue of his estate, apparently through omission, the court will not undertake to make a new will and dispose of it to particular persons, but it will be treated as intestate property.

Appeal from Wayne; Black (Edward D.), J., presiding. Submitted April 14, 1927. (Docket No. 103.) Decided June 6, 1927. Rehearing denied October 3, 1927.

Bill by James H. Lee and others against Bessie Lee Gaylord and the Detroit Trust Company, executor and trustee of the estate of James E. Lee, deceased, for a construction of a will. From a decree for defendants, plaintiffs appeal. Affirmed.

*Frederick A. Schopp* (*James H. Lee,* of counsel), for plaintiffs.

*Angell, Turner & Dyer,* for defendant Gaylord.

*Oxtoby, Robison & Hull,* for defendant Detroit Trust Co.

[1]Wills, 40 Cyc. pp. 1436, 1437; [2]Id., 40 Cyc. pp. 1436, 1437; 38 L. R. A. (N. S.) 91; 28 R. C. L. 281; [3]Id., 40 Cyc. pp. 1390, 1411, 1942.

McDONALD, J. The purpose of this suit is to secure a construction of the last will and testament of James E. Lee, deceased. The plaintiff Frank F. Frisbie was a brother-in-law of the testator. Anna Lorenz was his housekeeper. The other plaintiffs are nephews and nieces. The defendant Bessie L. Gaylord is a niece. The Detroit Trust Company is executor and trustee of the estate. The will reads as follows:

"Be it remembered, that I, James E. Lee, bachelor, residing in the city of Detroit, Wayne county, State of Michigan, being of sound mind and memory, do hereby make, publish and declare this instrument to be my last will and testament in manner as follows, to wit:

"A" "I hereby revoke and make void, and annul, any and all wills with all codicils thereto, by me heretofore made.

"B" "I will and direct that my administrator or executor shall, as soon as possible, without sacrificing same, convert all my personal property, of all kinds and descriptions, with exceptions as noted, and all my real estate, into cash, provided however that if I die possessed of any good securities, of any kind, that pay a good rate of interest, as high as any other that might be secured, or if no better securities can be procured; then all such securities be held, and the proceeds therefrom be used as is set forth below, and for purposes as are named.

"*First.* I especially except from the sale of my personal estate, a certain lease made to C. W. Restrick for ninety-nine (99) years, of my property on the corner of Madison avenue and Beaubien street in the City of Detroit, the proceeds from said lease I will and direct shall be disposed of as hereinafter provided.

"*Second.* I also except from sale of my personal estate and property, certain furniture, which shall be disposed of as is provided for below.

"C" "I will and direct that the proceeds from the sale of my personal estate, and from the sale of my real estate shall be used and disposed of as follows, to wit:

"*First.* I will and direct that all my just debts and funeral expenses shall be paid.

"*Second.* I will and direct that the expense of administration of my estate, and the expense of the trusteeship shall be provided for and paid.

"*Third.* I will and direct that the sum of two hundred dollars ($200) shall be paid to the trustees of Elmwood cemetery, in the city of Detroit, they to hold this amount in trust, and use the income therefrom in permanently and perpetually caring for a lot in said cemetery, known as the Lee lot, or the Henry Lee lot, in which are interred the remains of all of my deceased immediate relatives, and where I will and direct that my remains shall be placed when I am deceased.

"*Fourth.* I will and direct my administrators, or executors, shall purchase and cause to be placed at the head of the graves of the deceased persons named, a small stone marker, the same as is now at the head of my deceased sister's grave, Emma Lee Frisbie, with suitable inscriptions. The graves are as follows: that of Margaret McCullough Lee, my deceased mother, William H. Lee, my deceased brother, Elizabeth Lee Gaylord, my deceased sister. There shall also be placed at the head of the grave where I may be buried, the same kind of a stone and also there shall be retained sufficient funds by my administrators or trustees, to place at the head of the grave of my niece, Bessie Lee Gaylord, the same description of a marker, when she shall be deceased, and if buried in the Lee lot.

"*Fifth.* I will and direct that after all the amounts necessary as are specified in paragraphs one, two, three and four, in clause 'C,' as above, have been provided for, then the residue from the sale of my real estate, and personal property, shall be disposed of as follows, viz.: The sum of one thousand dollars shall be paid to Frank F. Frisbie, the husband of my deceased sister, Emma Lee Frisbie. I also will and direct that my administrators, executors, or trustees shall invest in good safe securities, bearing as high a rate of interest as is possible, such a sum as shall produce a total of three hundred dollars ($300) per annum, and said three hundred dollars, shall be paid to the said Frank F. Frisbie, semi-annually, during the period of his life, and at his decease my trustees shall divide said principal amount as follows, and pay the same as is herein

provided, viz.: Fifty per cent. (50%) or one-half of said principal amount shall be held in trust by my trustees, and the interest, or income from the same shall be paid to my niece, Bessie Lee Gaylord, during her lifetime in semi-annual payments, viz.: Seventy-five dollars every six months, and at her death the said one-half of principal amount held in trust for said Frank F. Frisbie shall revert to my estate and be disposed of as is provided for below.    At the decease of said Frank F. Frisbie, the half, or 50% of principal amount set aside in trust for his benefit shall be divided share and share alike, and paid to the following persons, viz.:    James H. Lee, my nephew, Arthaline Lee Patton, Margaret Lee Mossheimer and Ruth Melba Jansen, my nieces.    Should any of the above named be deceased before the death of said Frank F. Frisbie, or before the settlement of my estate, and should they die without issue, then his or her amount or share shall be paid to the survivors share and share alike, but if they leave children, the child, or children shall heir the father or mother's share as case may be. The bequest in this paragraph of clause 'C,' of my will made to the said Frank F. Frisbie, is made in recognition and in consideration of friendly favors shown me, and the interest he has taken in my affairs for many years.

"D" "I will and direct that the income of two hundred dollars ($200) per month, which I receive from the long time lease of my property on the corner of Madison avenue and Beaubien street, made to C. W. Restrick, shall be divided as follows, viz.:    One hundred and fifty dollars ($150) shall be paid to my niece, Bessie Lee Gaylord on the fifteenth (15) of each and every month during her lifetime and at her decease shall be divided share and share alike, on same terms and conditions, as are set forth above in clause 'C,' of this, my will, between James H. Lee, Arthaline Lee Patton, Margaret Lee Mossheimer and Ruth Melba Jansen.

"*Second.* I will and direct that the remaining fifty dollars ($50) of the two hundred dollars received monthly from the long time lease specified above, shall be paid to my housekeeper, Mrs. Anna Lorenz of Detroit, Michigan, on the fifteenth (15) of each and every month, as long as she lives and remains a widow, at

her decease, or if she should marry, then the said payments shall cease, and the said amount of fifty dollars per month shall revert to my estate and be disposed of as is provided for below.   This bequest made to Mrs. Anna Lorenz, is in recognition and in consideration of the care and attention she gave me when I was seriously ill, some years ago, and further for her services in taking care of my house and myself in all of the succeeding years.

"E" *"First.* I will and direct that all of my furniture, rugs, draperies, pictures, etc., now in my house at No. 1232 Fourteenth avenue, Detroit, Michigan, with exceptions as noted below, shall be given to Mrs. Anna Lorenz, my housekeeper, for her use and benefit, or be disposed of as she may deem fit.

*"Second.* Excepted from said furniture, etc., are the following articles described as follows, viz.:   One brass bed and mattress, one Vose upright piano and stool, one large pier mirror in gilt frame, and one mantel mirror.   One Victrola and records, one banjo and one davenport and one fumed oak outfit, these articles shall be given to Bessie Lee Gaylord, my niece, if she cares to have them, or for her to dispose of as she may deem fit.

"F" "I will and direct that any property of any description, personal or real, that I may die possessed of, and that I may not otherwise have disposed of, shall be divided as follows, fifty per cent. (50%) or one-half of the residue of my estate, shall be held in trust and the proceeds invested in good securities, the income therefrom to be paid to Bessie Lee Gaylord, during her lifetime, and at her death any such amount so invested, shall be divided between James H. Lee, Arthaline Lee Patton, Margaret Lee Mossheimer, and Ruth Melba Jansen on same terms and conditions as are set forth in clause 'C' and paragraph five (5) above, in this my will.

"G" "I will and direct that should any of the beneficiaries to whom I have made bequests, die before my decease, or my estate is settled, then any bequests made to them, shall become a part of the residue of my estate and be divided on the same terms as are set forth above in clause 'F' of this, my will, and in clause 'C,' paragraph five (5).

"H" "I will and direct that if after the decease of my niece, Bessie Lee Gaylord, and Mrs. Anna Lorenz,

to whom I have left the permanent income from the long time lease on property corner of Madison avenue and Beaubien street, it should be the unanimous desire of the heirs to my estate, then surviving, that the said lease should be sold, and it can be disposed of advantageously, my administrators, or executors and trustees shall dispose of said lease, and divide the proceeds of said sale among the surviving heirs on same terms and conditions as are set forth in this, my will.

"I" "I will and direct that the Detroit Trust Company, of Detroit, Wayne county, Michigan, shall be made administrators and executors of this, my last will and testament, and shall be made trustees for all trust funds that I have provided for in this, my last will.

"In witness whereof, I have hereunto set my hand and seal on this 1st day of May, in the year of our Lord, one thousand nine hundred and twenty.

"JAMES E. LEE    (L. S.)"

The controversy is over the proper construction of clause "F" of the will.    In this clause the testator undertakes to dispose of the residue of his estate, but in express terms only disposes of half of it.    Counsel for the plaintiffs claims that, reading the whole will, it was the apparent intention of the testator to devise to plaintiffs James H. Lee and his three sisters one-half of the residue, which was not in terms disposed of in clause "F."    He also urges in his brief, that the testator's failure to so devise the one-half of the residue in express language, was due to a mistake, and claims the right to supply the omission by oral evidence of the scrivener.    Mr. Frisbie was the scrivener.    He testified that he wrote the will on a typewriter, but that, before he got through with clause "F," he had a "brainstorm" and failed to follow the written instructions of the testator as to the disposition of the remaining one-half of the residue.    If we should write into the will what the scrivener claims to have omitted because of his brainstorm, it would be materially changed.    We cannot make a new will for the testator on the parol evidence of the scrivener.    In *Waldron* v. *Waldron*, 45 Mich. 350, this court said:

"Oral evidence cannot be introduced to explain the intent, except as it may bring before the court such circumstances surrounding the making of the will as may be necessary to an understanding of the terms employed. The evidence of the scrivener as to statements made to him preliminary to the drawing of the will must, therefore, be rejected. To act upon these would be to frame a new will for the testator, based upon an intent which we should reach upon parol evidence, but which she had failed to express in legal form."

This will cannot be construed in conformity with the scrivener's testimony. The construction must be determined only by a consideration of the whole will.

In his construction of the will, the circuit judge determined that the testator died intestate as to one-half of the residue of the estate; and defined the residue to be what remained after payment of all debts and expenses enumerated in 1, 2, 3, and 4 of clause "C," and the legacy of $1,000 to Frank F. Frisbie, excepting the long term lease and the household goods.

It will be noted that there is no ambiguity in the language of clause "F." It is an omission rather than an ambiguity that the plaintiffs complain of. It is argued that an unintentional omission is apparent when clause "F" is read in connection with other paragraphs of the will, and particularly with clause 5 of paragraph "C." It is insisted that the court's construction of clause "F" is inconsistent with the plain intention of the testator, as expressed in clause "C 5." We quote from plaintiffs' brief:

"Judge Black's construction of clause 'F' is shown to be erroneous when considered in conjunction with paragraph 'C 5.' Here the principal of said estate necessary to create the annual life annuity of $300 a year to Mr. Frisbie is, under the said clause, in the event of Mr. Frisbie's death, before or after the estate is closed, expressly disposed of as follows: One-half of said principal (which we may assume is ap-

proximately $6,000 at 5% to earn the $300), or the sum of $3,000, to go outright to James H. Lee and his sisters. The other half of said $6,000 or $3,000, would under said clause, be used to create a life income to Miss Gaylord, and at her death 'such sums shall revert to my estate and be disposed of as provided for below.' This would become part of the residue. And under Judge Black's construction it would be disposed of after Miss Gaylord's death (which would terminate her life interest in the income) so as to still give her estate one-fifth of the principal necessary to create said income. In this way she could will such one-fifth of the residue of Mr. Lee's estate, as this portion of Mr. Lee's estate amounts to, *i. e.,* the $3,000 above mentioned."

Briefly stated, the proposition is that in clause "C 5" it was the intention of the testator that Miss Gaylord should have only the income from a certain fund; but, that, as the circuit judge has construed clause "F," testator intended that she should have not only the income, but one-fifth of the fund. There would be much force in counsel's argument if it were not based on a misconstruction of clause "C 5." He is mistaken in assuming that any of the funds therein mentioned will eventually become a part of the residue of the estate. It is all ultimately disposed of in clause "C 5," a proper construction of which means that Miss Gaylord would get only an annuity of $150 from the income of one-half of the fund held in trust for her, and on her death the half of the fund from which her annuity was derived would go to James H. Lee and his sisters. The other half was given outright to them. In a subsequent portion of his brief, counsel for the plaintiffs agrees with this construction. When it is kept in mind that the half of the fund from which Miss Gaylord derives her annuity will not become a part of the residue, there is no difficulty in harmonizing clause "C 5" with clause "F" as construed by the circuit judge. But counsel also says these two clauses should be considered in connection with clause

"G," and that the construction placed on clause "F" by the court makes "clauses 'C 5' and 'G' indefinite, repugnant, and inconsistent therewith, and prevents the intention of the testator from being carried out." Clause "G" provides that if any of the beneficiaries die before the testator or before the settlement of his estate, any bequests made to them shall become a part of the residue of the estate and be divided as is set forth in clause "F" and in clause "C 5." Again counsel's trouble is in supposing that any portion of the funds mentioned in clause "C 5" will become a part of the residue. If that clause leaves nothing undisposed of, the other two clauses "F" and "G" are in harmony with it, and all may be given effect in carrying out the testator's intention.

Again, it is urged by counsel that, under the construction which the court has given to clause "F," it becomes inconsistent with the second paragraph of clause "D," which he claims when read in connection with clause "G" gives a part of the principal producing the income for Mrs. Lorenz to Miss Gaylord. Clause "F" has nothing to do with property or funds disposed of in clauses "D" and "C 5." It covers only such property as ultimately becomes a part of the residue. The bequest to Mrs. Lorenz in clause "D" is derived from the income from the long lease. When she marries or dies her legacy lapses, and the rentals which she would have received go to James H. Lee and his three sisters, who own the lease. They do not go into the residue, and therefore clause "F" has no application to them. In clause "F" there appears to have been no intention to change the disposition made in "C 5."

We have considered each provision of the will in connection with every other part, and find that they harmonize, and each can be given operative force under the construction placed on clause "F" by the circuit court. The testator probably intended to dispose of

all his property by this will.  The presumption is that he did; but considering the will in its entirety, we are unable to so construe it as to effect that result.  It is our judgment that the circuit judge reached a correct conclusion.

His decree is affirmed in all respects.  The defendants will have costs.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.