**HOLCOMB et al. v. NEWTON et al.**

No. 6480.

Court of Civil Appeals of Texas. Texarkana.

Jan. 5, 1950.

Rehearing Denied Jan. 26, 1950.

R. T. Wilkinson, Mt. Vernon, Woodrow Edwards, Mt. Vernon, Brown & Russell, Mt. Pleasant, for appellants.

Ward & Benson, Mt. Pleasant, for appellees.

WILLIAMS, Justice.

This litigation involves the construction of the last will of Chester Arthur Gregg which was admitted to probate November 8, 1948, in the County Court of Franklin County, Texas, which reads:

"The State of Texas } Know all men presents that I Chester
County of Franklin } Arthur Gregg, being of sound

and disposing mind and memory and desireing to wind up my business while I have mental capacity sufficient to do so, do make and publish this my last will and testament hearby revoking all others heartofore made by me, writting the same in my own hand writting in full.

Item 1st

"At my death I desire that my body have a Christian burial suitable to my station in life and that all my just debts be paid, I have placed a monument at the grave of my brother Marion Aubrey Gregg which is a double monument, and at my death I direct that the places be filled in where they are left out shoing my date of my berth and death.

—2nd.

"After all my debts are paid I give and bequeath the rest and residue of my estate to the folloing named persons in the proportions set out.

—3rd.

"I make nominate and appoint Artie Marion (Pet) Holcomb and Ernest Wilson Gregg executors of this will and direct that thea act as such without bond.

—4th.

"I direct that no *action* be had in the county court in the administration of my estate except the making and returning and inventory and list of claims due my estate. And if it should become necessary to raise cash sufficient to pay my debts I direct that my executors make sales of personal property or land at public or private sale without any order of the probate *or* any other court.

"This will is wr*itten* wholly in my hand writing. I will *state* that I have heretof*our* made a will to my brother Marion Aubrey Gregg but I am now unable to find it and it must have been lost; however, since he is now deceased this will is made in lieu of and in revocation thereof.

"Witness my hand this the—14 day of April A. D. 1942 —

"Chester Arthur Gregg."

Appellants, Artie (Pet) Holcomb, a half-sister, and Ernest W. Gregg, a half-brother, the defendants below, qualified as independent executors and returned into the court an inventory and appraisement of the estate. Later, appellees, Milton Newton and others, the children of Jewel Newton, deceased, a sister of Chester A. Gregg, filed this suit in the district court. They sought to recover their respective interests, asserting that the residue of the estate passed to the heirs under the laws of descent and distribution.

Extrinsic evidence which was admitted in evidence over objections of plaintiffs related to the alleged attentive care and visitations of Artie Holcomb and Ernest W. Gregg for the testator and the latter's affection and interest toward them; a law suit that arose in 1907 between testator,

Jewel Newton and a deceased brother over a partition of their father's estate and the alleged estrangement between the testator and plaintiffs as a result thereof; of the absence of visitations through the years by plaintiffs in testator's home; and of alleged declarations of the testator both prior and subsequent to the date of the will that he intended to leave his property or had willed his property to Ernest Gregg and Pet Holcomb. It appears that the testator, a farmer and stockman with a very limited school education, was unfamiliar with legal terms.

The sole issue submitted to which the jury answered "yes" reads:

"Do you find from a preponderance of the evidence that Chester A. Gregg, by using the words: 'I give and bequeath the rest and residue of my estate to the following named persons' meant to will his property to Ernest Wilson Gregg and Artie Marion (Pet) Holcomb?"

In answering this question the jury was instructed, "that the will must be construed as a whole from the beginning to end, taking into consideration the entire will; you may take into consideration the fact that the will was written wholly by him, and his unfamiliarity with legal terms. You may also in arriving at his intention, consider his position with reference to the parties to this suit, his feeling toward them and any fact or circumstance that might in your opinion discover what his intended meaning of any language was. You are further instructed that words, sentences or clauses or even whole paragraphs of the will may be transposed and read together to determine his intention and whether he intended to give his property to any one named in the will."

Upon consideration of the respective motions filed after the jury verdict, the trial court entered judgment non obstante veredicto and awarded plaintiffs the interests sought by them under the laws of descent and distribution and for writ of partition. This action is sustained. Heidenheimer v. Bauman, 84 Tex. 174, 19 S.W. 382, 31 Am. St.Rep. 29; Schelb v. Sparenberg, 133 Tex. 17, 124 S.W.2d 322, 326, and authorities there cited. Lee v. Gaylord, 239 Mich. 274, 214 N.W. 104; Jones v. Bennett, 78 N.H. 224, 99 A. 18; Stearns v. Stearns, 103 Conn. 213, 130 A. 112; and further cases cited and discussed in 94 A.L.R., pp. 69, 70, 124, 125; Northcott v. Texarkana National Bank, Tex.Civ.App., 142 S.W.2d 535; Brumley v. Neeley, Tex.Civ.App., 207 S.W.2d 931, 936.

The second paragraph of the will supports appellants' contention that the testator intended to dispose of all his estate. We may add that it likewise indicates that he indicated to bequeath this remainder to more than one person by the use of the word "persons." Especially does the phrase "in the proportions set out" reveal that the testator had a fixed plan of distribution in proportions which he failed to specify in his will. The trial court concluded as expressed in the judgment that the extrinsic evidence hereinabove mentioned raised no issue of fact and was inadmissible to supply above omissions made by the testator, apparent upon its face.

Construing the will from its "four corners," and all terms and words therein, the court concluded that the "persons named in item 3 of such will as the executors do not come within the purview of the phrase, 'the following named persons in the proportions set out' in item two of such will." The use of the phrase "in the proportions set out" definitely reveal that the testator had a fixed plan of distribution to persons not named and in proportions not designated.

■ "It is a general rule that extrinsic evidence is not admissible to fill up a total blank on the face of a will, or to determine the person or property intended by the testator, where there is a total failure to designate any." 57 Am.Jur. (Wills), Sec. 1047; 44 T.J. (Wills), Sec. 130. "In construing the will * * * it was the plain duty of the trial court * * * to determine what the testatrix meant by what she actually said in her will, and not by what we think she may have intended to say but did not say." Smoot v. Harbour, Mo.App., 203 S.W.2d 890, 894.

■ The instrument which the testator probably copied from when he drew his will

here in issue, if admitted in evidence would be of no service in supplying the omissions above discussed because it, too, omits to name any person.

The judgment of the trial court is affirmed.