William J. RUEDLINGER (Relator) Appellant,

v.

I. A. LONG, Milton Carpenter, Jeremiah O'Connell, Abraham Lowenhaupt, N. A. Sweets, Thomas L. Moran, and Walter J. Kyle, Constituting the Members of the Police Retirement System of St. Louis, Respondents.

No. 29292.

St. Louis Court of Appeals. Missouri.

Nov. 15, 1955.

Rehearing Denied Dec. 9, 1955.

Paul E. Fitzsimmons, St. Louis, for appellant.

Samuel H. Liberman, City Counselor, Charles J. Dolan, Assoc. City Counselor, William A. Geary, Jr., Asst. City Counselor, St. Louis, for respondents.

HOUSER, Commissioner.

This is a petition for a writ of certiorari brought by William J. Ruedlinger against I. A. Long and others, members of the Board of Trustees of the Police Retirement System of St. Louis, seeking a review of the proceedings and record of the board disallowing relator's application as a member of the retirement system for accidental disability retirement benefits under §§ 86.073 and 86.077 RSMo 1949, V.A.M.S. From the judgment of the Circuit Court of the City of St. Louis affirming the action of the board of trustees relator appeals to this court.

■■ There is a preliminary question of jurisdiction to be considered. Relator has undertaken to secure a review of the board's action by filing a petition for a writ of certiorari, thus misconceiving the proper form of a petition in such a case. Since July 1, 1946, the provision of the retirement act for review of contested cases by common law certiorari, § 86.037 RSMo 1949, V.A.M.S., has not been in force. Since that date judicial review of the decisions of the Board of Trustees of the Police Retirement System of St. Louis has been governed by Section 10 of the administrative procedure and review act, Chapter 536 RSMo 1949, as amended, Laws 1953, p. 679; V.A.M.S., State ex rel. Police Retirement System of City of St. Louis v. Murphy, 359 Mo. 854, 224 S.W.2d 68, loc. cit. 73. (Certiorari is authorized in noncontested cases by the express provision of § 536.105 RSMo 1949, V.A.M.S., Laws 1953, p. 678, but the instant case is a contested case, see Scism v. Long, Mo.App., 280 S.W.2d 481, and therefore § 536.105, supra, is inapplicable.) The appeal, however, should not be dismissed. There was a substantial compliance with § 536.110 RSMo 1949, V.A.M.S. Relator, within thirty days after respondents' final decision, filed proceedings in the circuit court seeking a review of that decision. Thereby the circuit court acquired jurisdiction. Our jurisdiction on appeal is provided for by § 536.140, subd. 6 RSMo 1949, V.A.M.S. See Disabled Police Veterans Club v. Long, Mo.App., 279 S.W.2d 220.

Relator's claim to the benefits sought is based upon § 86.073, supra, which provides as follows:

"Upon application of a member of the board of police commissioners any member who has become totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place through no negligence on his part, shall be retired by the board of trustees provided that the medical board shall certify that such member is mentally or physically incapacitated for further performance of duty, that such incapacity is likely

to be permanent and that such member should be retired."

█ Pursuant to this section an application for accidental disability retirement benefits was duly made on behalf of relator. At a hearing conducted by respondents the following evidence was introduced: Relator was appointed as a patrolman in 1924 and served as such until February 16, 1952, except for periods of time lost as follows:

| Date | Time Lost | Disability |
|------|-----------|------------|
| 12–11–26 | 4 days | Tonsillitis. |
| 10–26–30 | 8 days | Wrenched neck, back and shoulder, contused right knee. (Relator's motorcycle was struck by an automobile.) |
| 10–29–31 | 18 days | Injury to right knee and thigh, and right hand caused by collision between an automobile and relator's motorcycle. |
| 3–26–34 | 6 days | LaGrippe. |
| 2–16–38 | 15 days | Acute tonsillitis. |
| 4–14–38 | 1 day | Puncture wound, right foot. |
| 4–23–38 | 3 days | Pain as a result of the puncture wound. |
| 4– 6–39 | 5 days | Lumbago. |
| 9–12–39 | 6 days | Tonsillectomy. |
| 1–20–40 | 2 days | Rheumatism. |
| 3–18–41 | 3 days | Pleurisy—right side. |
| 10– 4–42 | 15 days | Left arm bruised, contusions of left index finger and right knee (Relator was struck by an automobile while walking toward police call box). |
| 7– 1–44 |  | Contusions of right leg below knee cap, sprain of right shoulder, abrasions of both hands (inflicted while arresting a drunken man who fought and kicked the police officer). |
| 7–14–45 | 23 days | Boils on legs. |
| 12– 8–46 | 28 days | Lipomas removed. |
| 12–25–48 | 39 days | Sacroiliac condition, inflammation of right sciatic nerve (Relator attempted to lift a heavy object at the police station while checking a license number). |
| 3–19–51 | 34 days | Inflammation of gall bladder. |
| 8– 4–51 |  | Strained muscles of the back and right leg. |
| 2–16–52 |  | Osteoarthritis of hip joints. |

Relator's principal claim of accident arising out of police duty is based upon an incident which occurred on February 16, 1952, while he was assisting another police officer in carrying a stretcher down a flight of steps. Thinking that he was on the ground level relator stepped while on the last step, causing him to strain his back and right leg. Treated by physicians for several months after February 16, 1952, relator did not thereafter return to active duty.

X-ray examination of the right hip, reported on 12–8–42, was negative for injury, old or recent. No fracture, dislocation of bone or joint disease was noted about the bones of the right knee in an X-ray report dated 12–9–44. X-rays of the right knee were negative for fracture or dislocation, 3–6–52. No fracture, dislocation or anomalies of the lumbar spine were demonstrated in an X-ray report dated 3–17–52. A report of a pelvic X-ray examination dated 3–31–52 showed considerable

degenerative osteoarthritis of the right hip joint, but no other evidence of disease. Relator's personal physician reported that an X-ray examination made prior to August, 1952, revealed osteoarthritic changes in both hip joints.

Dr. Albert M. Repetto of the Police Department examined relator in March, 1952. He reported no swelling in the right knee, no demonstrable muscle spasm in the thigh or back and no important findings. He noted that relator complained of pain in his thigh and was of the opinion that relator would miss many days from duty on account of arthritis.

The Medical Board of the Police Retirement System, consisting of Drs. Hellrung, Raemdonck and Parker, examined relator on August 8, 1952. They certified that relator was physically incapacitated for the performance of police duty; that his incapacity was likely to be permanent, and that he should be retired. Each of these doctors signed a written report stating that the alleged injuries had no effect upon the present condition of relator. In his testimony Dr. Hellrung pointed to relator's long history of tonsillitis, inflammation of the gall bladder, lumbago, grippe, etc., by which arthritis, of an infectious origin, may have developed insidiously over the years. He testified that "everything would indicate" that relator's sciatica is directly attributable to a disturbance in the neuron sciatic nerve head as a result of progressive osteoarthritic changes. He testified positively that in his opinion the accident was not the cause of his condition; that relator's condition was "not of a traumatic nature." He stressed that all of the accidents were of a minor nature, with nothing to indicate a serious injury to relator's sacroiliac joint or to his hip—no fracture, no dislocation, "there was nothing." He further testified that the accident would not hasten the osteoarthritic deterioration; that he "would have to have a fracture or have some definite injury, trauma, to the bone, which would have been demonstrated by X-ray March 17, 1952, at St. Anthony's (hospital), which states there was no trauma or disease except osteoarthritis." Dr. Parker, interpreting Dr. Hellrung's testimony, said that the complaints are a manifestation of a condition that has existed over a long period of time and has gradually progressed. Dr. Raemdonck agreed with Dr. Hellrung, testified that these injuries were "more or less of a trivial nature." Pointing to the X-ray reports of no fracture or dislocations but showing degenerative osteoarthritis, he concluded that relator's condition was of an infectious or degenerative nature, "but it, certainly, is not traumatic." The written conclusions of the three doctors supporting their certificate of physical incapacity and the advisability of retirement were as follows: Right sciatica; bi-lateral flat feet; obesity; early hypertension; minimal osteoarthritis of the right hip and sacroiliac joint.

Appellant's contention is that relator had a latent and dormant arthritis which was not disabling and that the accidental injury of February 16, 1952, accelerated and aggravated the ailment, thereby rendering it impossible for relator to perform further police duty. Appellant argues that the series of accidents suffered by relator while in the discharge of police duty reveal a pattern in which injuries were inflicted on relator's back and leg, and contends that subsequent accidents, aggravating the earlier injuries, caused his debilitation. Appellant argues that before the accident relator was not disabled and worked regularly; that since the accident he has been disabled and prevented from working, and concludes that on the facts relator's disability is the proximate result of an accident, thus entitling him to an allowance under § 86.077, supra. Appellant also refers to selected passages from the testimony of Dr. Hellrung, from which appellant concludes as folows: "Apparently what Dr. Hellrung and his cohorts are trying to say is that objectively the degree of deterioration at the time of their examination could not be conclusively and unequivocally stated to have been increased by the accident, while admitting that the subjective symptoms which actually result-

ed in the disability were aggravated and induced by the accident."

In connection with his testimony that the man's condition was not of a traumatic nature Dr. Hellrung stated that it *"could be,* to some extent, aggravated as a result of an injury," and in answer to a general hypothetical question he testified that *"We always make the statement"* that "the condition has been aggravated as a result of an injury, but is not the cause of the injury or is not the cause of the existing sciatica." He further said that an accident *may be* an aggravating factor to a pre-existing condition, but added that it is not the cause of the condition. He denied that the accident *could* precipitate or hasten the deterioration. He stated that the fact that the accident occurred to the particular member would merely tend to aggravate the condition as it exists and would "probably" have a tendency to hasten the condition "insofar as symptoms are concerned." One of the respondents asked the doctor this question: "If the man had this osteoarthritis, which you say he finally had, and he had a sacroiliac condition, which I have also and Milton has, if that sacroiliac is disturbed by an accident and I can't walk or I can't get up until they put it back again, could that accelerate the symptoms of the arthritis so that it would disable him completely?" Dr. Hellrung answered "There is no question that it would, absolutely." He went on to explain, however, that there is a "big difference" between a sacroiliac condition, an injury involving a separation of the ligaments of the sacrum, ilium, and coccyx (of which there was no evidence in this case) and an osteoarthritis of the sacroiliac joint. Relator's interpretation of Dr. Hellrung's testimony, based upon selected excerpts, is not justified, if the meaning and import of his testimony as a whole is properly understood. Considering the record as a whole we conclude that the sum and substance of the testimony of Dr. Hellrung and of the other doctors is that the condition which finally disabled relator from the performance of further police duty was a progressive, degenerative condition of osteoarthritis of long duration which had its onset in a series of infections suffered by relator; that the series of accidents experienced by relator were of a minor or trivial nature insofar as they affected relator's condition, and that they were not sufficiently serious to have had any appreciable effect upon relator's condition.

Appellant cites a number of cases at common law and under the workmen's compensation act announcing the rule that recovery may be had for accidental or negligent infliction of injury resulting in aggravation of an existing infirmity or dormant disease even though the particular injury would have produced no such result in the case of a normal and healthy individual: Widener v. St. Louis Public Service Co., 360 Mo. 761, 230 S.W.2d 698; Wills v. Berberich's Delivery Co., 339 Mo. 856, 98 S.W.2d 569; Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215; Cheek v. Durasteel Co., Mo.App., 209 S.W.2d 548; Harder v. Thrift Const. Co., Mo.App., 53 S.W.2d 34. It must be borne in mind, however, that the question on this appeal is not whether relator made a case or made a substantial showing in his own behalf of aggravation of a pre-existent dormant disease by an injury or injuries. Nor does appellant contend that the board's decision is clearly contrary to the overwhelming weight of the evidence.

The question brought here for review is whether the decision disallowing relator's claim is supported by competent and substantial evidence upon the whole record, or is arbitrary, or for any other reason unauthorized by law. We are fully satisfied that the board's decision is so supported, as demonstrated above, that it is fully authorized by law, and that there was no arbitrary denial of relator's claim.

The Commissioner therefore recommends that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed.

ANDERSON, P. J., MATTHES, J., and SAM C. BLAIR, Special Judge, concur.