In the Matter of the ESTATE of Rosa
FAIRLEY, Deceased.

Frank S. FAIRLEY and James W. Fairley,
Executors, Frank S. Fairley and James W.
Fairley, Executors of the Estate of Rosa
Fairley, Plaintiffs-Appellees,

v.

Lea FAIRLEY, Frank S. Fairley and James
W. Fairley, Defendants-Appellants.

No. 52918.

Supreme Court of Iowa.

June 11, 1968.

James T. Holmes, and Lynch, Dallas, Smith & Harman, Cedar Rapids, for defendant, appellant, Lea Fairley.

White, Stone & Horan, Marion, for plaintiffs and for defendants, Frank S. Fairley and James W. Fairley, appellees.

STUART, Justice.

This action to obtain judicial construction of the Last Will and Testament and Codicil of Rosa Fairley was brought by Frank S. Fairley and James W. Fairley individually and as executors claiming the will and codicil are ambiguous when read together and there is doubt and uncertainty as to the interests of the parties thereunder. Defendant, Lea Fairley, alleges there is no ambiguity. His application for separate adjudication of law points resulted in a final decision adverse to his construction of the instruments. He has appealed.

As the proceedings did not reach an evidentiary hearing, all we have before us are the will and codicil. After providing for the payment of debts and giving $1000 to Sarah Jane Fairley Clark, her granddaughter by a deceased child, Mrs. Fairley's will dated June 30, 1939, provided:

"ITEM THREE

"All the rest, residue, and remainder of my estate, whether real, personal or mixed of which I may die seized or possessed or to which I may then be entitled, I will, devise and bequeath as follows:

"One-third thereof to Frank S. Fairley and James W. Fairley in trust, for the use and benefit of my son, Lea Fairley. I direct that my said trustees shall act without compensation and pay annually the net income from said trust fund to my son, Lea Fairley, during the term of his natural lifetime. Upon the death of my said son, Lea Fairley, then the undivided one-third interest shall be divided equally between my sons Frank S. Fairley and James W. Fairley.

"One-third thereof to my son, Frank S. Fairley and one-third thereof to my son, James W. Fairley."

On February 18, 1952 Mrs. Fairley executed the following Codicil to her Will:

"I, Rosa Fairley, residing in the City of Marion, Linn County, Iowa, being of sound and disposing mind and memory do hereby make, publish and declare this as and for a Codicil to my Last Will and Testament dated June 30, 1939, hereby reaffirming said Last Will and Testament except as

hereby changed or modified. That is to say:

"I hereby revoke Item Three of my Last Will and Testament and substitute therefor the following:

"ITEM THREE: All the rest, residue and remainder of my estate, whether real, personal or mixed, of which I may die seized or possessed, or to which I may be entitled, I will, devise and bequeath as follows:

"One-third (⅓) to Frank S. Fairley and James W. Fairley in trust, for the use and benefit of my son, Lea Fairley. I direct that my said Trustees shall act without compensation and pay the annual net income from said trust fund to my son, Lea Fairley, plus the income from an additional sum of Twenty-five Hundred Dollars ($2500.00), during the term of his natural lifetime.

"Upon the death of my said son, Lea Fairley, then the undivided one-third (⅓) interest shall be divided equally between my sons, Frank S. Fairley and James W. Fairley."

The trial court concluded "the intent of the testator is obvious from an objective and unbiased reading of the will and codicil when read together" and found "no ambiguity, latent or patent, which is apparent from a reading of the instruments". He rendered judgment as follows:

"That the Will and Codicil of the testator, Rosa Fairley, effectively serve to vest in James W. Fairley and Frank S. Fairley as trustees for the use and benefit of Lea Fairley, a sum equal to one-third of the rest, residue and remainder of the estate of the decedent after the payment of all debts, claims, expenses of administration, taxes, and the bequest provided for in Item II of the original Will of the testator of $1,000 to Sarah Jane Fairley: that said Will and Codicil serves to vest in the said trustees, Frank S. Fairley and James W. Fairley, an additional sum of $2,500, and that said resultant trust estate shall pass

to the said Frank S. Fairley and James W. Fairley in trust for the use and benefit of the beneficiary, Lea Fairley, during the term of his natural life only. That upon the death of the said Lea Fairley the corpus of said fund shall pass to and be divided equally between Frank S. Fairley and James W. Fairley.

"(2) That said Will and Codicil effectively vests in each James W. Fairley and Frank S. Fairley an undivided one-half interest in and to all sums and property remaining after the establishment of the trust fund for the benefit of Lea Fairley above referred to."

■ I. We concede the trial court's decision probably rendered substantial justice in this case and the result approached that which testatrix would have desired. However, we do not believe his decision can be affirmed under recognized rules of will construction. Although our purpose is to arrive at the true intent of the testatrix, experience has demonstrated the advisability of adhering to established rules for the construction of wills rather than freeing judges to operate on broad principles of equity and justice. 51 I.L.R. 103–106.

■ It is a universal rule that a testator's intention must be gathered from the language of the instrument where such language is clear and unambiguous. "The question is not what the testator meant to say but what he meant by what he did say." In re Estate of Hogan, 259 Iowa 887, 146 N.W.2d 257, 258; In re Estate of Winslow, 259 Iowa 1316, 147 N.W.2d 814, 818; Bankers Trust Co. v. Allen, 257 Iowa 938, 944, 135 N.W.2d 607, 610–611. If the language of the will and codicil is clear and unambiguous this rule applies. In making this determination we read and construe the two instruments as one executed on the date of the codicil. Watson v. Manley, 257 Iowa 92, 97, 130 N.W.2d 693, 696; In re Estate of Artz, 254 Iowa 1064, 1070, 120 N.W.2d 418, 422.

It seems anomalous to say we agree with the trial court that the language of the will

and codicil read together is clear and unambiguous and then reach the opposite conclusion as to the meaning. However, the trial court's decision appears to be a logical speculation on what testatrix meant to say, but didn't, rather than determining the meaning from what she did say.

"Item Three" of the will disposed of testatrix's remainder estate in equal one-third shares to her sons. Frank and James were to receive their shares outright. Lea's share was given to them in trust and he was to receive the income for life. On Lea's death Frank and James were to divide his one-third share.

■ The codicil specifically revoked "Item Three" and substituted a different provision. This provision increased the trust fund by adding $2500 to Lea's one-third share of the remaining estate. The one-third share was to be divided equally between Frank and James when the trust terminated. The codicil did not dispose of the additional $2500 upon termination of the trust. It did not dispose of the remainder of testatrix's property. We do not believe the language of the instruments lends itself to any other construction. There is no indication anywhere in the codicil that the revocation was not to apply to the second paragraph of "Item Three". Under this construction Mrs. Fairley died intestate as to two-thirds of her estate including the $2500 in trust subject to Lea's life estate.

We are not suggesting testatrix sought this result in her testamentary planning and agree with the trial court that she did not mean to leave anything to Lea Fairley outright. However, the situation is similar to the one with which we were faced in Bankers Trust Co. v. Allen, 257 Iowa 938, 135 N.W.2d 607, where decedent's will failed to dispose of the share of his estate included in a bequest to his sister, which lapsed. As a result, one-half of testator's large estate went to his heirs, some of whom he did not even know. We said: "The testator's intention must be determined from what he said, not from what it may be supposed he intended to say or should have said." 257 Iowa at 944, 135 N.W.2d at 610.

"Indeed it may be conceded testator did not intend to will any of his property to any of his heirs other than his sister Mary. They make no claim under the will. Their claim is under the statutory rules of descent. The only way decedent could vary these rules is by making an effective gift, either expressly or by necessary implication, at variance therewith. That he did not do. Certainly he made no express provision for the disposition of Mary's share if she did not survive decedent. None is claimed. There is a strong presumption (we have said 'very strong') decedent did not intend a bequest not expressed in the will." 257 Iowa at 945, 135 N.W.2d at 611.

■ Appellee argues wills are to be construed to avoid partial intestacy. In re Estate of Austin, 236 Iowa 945, 948, 20 N.W.2d 445, 447, 162 A.L.R. 709; Myers v. Smith, 235 Iowa 385, 393, 16 N.W.2d 628, 632, 155 A.L.R. 1413; Busby v. Busby, 137 Iowa 57, 61, 114 N.W. 559. This is particularly true when, as here, the instrument expresses an intent to dispose of all of testatrix's property.

"It is true, * * *, there is a presumption a testator intends to dispose of his entire estate. But the language of the will must be sufficient to carry the whole. The presumption referred to does not permit us to write into the will a provision omitted therefrom." Bankers Trust Company v. Allen, 257 Iowa 938, 947, 135 N.W.2d 607, 612.

"The presumption does not require the court to make a new will, nor to include in it property not comprehended by its terms, and cannot be invoked to establish a gift against the rules of law declaring the legal meaning of the language in a will." Harvey v. Clayton, 206 Iowa 187, 192, 220 N.W. 25.

These principles are supported by many Iowa authorities including: Ransom v.

Mellor, 230 Iowa 451, 455, 297 N.W. 861, 863; Anderson v. Anderson, 227 Iowa 25, 35, 286 N.W. 446, 451; Starr v. Newman, 225 Iowa 901, 905, 281 N.W. 830, 832; Gilmore v. Jenkins, 129 Iowa 686, 692, 106 N. W. 193, 195.

Numerous foreign authorities also support this position in substantially the same language. In re Hoytema's Estate, 180 Cal. 430, 181 P. 645; In re Beldon's Estate, 11 Cal.2d 108, 77 P.2d 1052; In re Corwin's Estate, 86 Idaho 1, 383 P.2d 339, 342; Peoples Bank of Bloomington v. Hoffman, 403 Ill. 463, 86 N.E.2d 185, 186; Pimpel v. Pimpel, Ky., 253 S.W.2d 613, 35 A.L.R.2d 1092, 1094–1095; McElroy v. Mercantile Safe Deposit & Trust Co., 229 Md. 276, 182 A.2d 775, 778; National Shawmut Bank of Boston v. Zink, et al., 347 Mass. 194, 196 N.E.2d 917, 918; Lee v. Gaylord, 239 Mich. 274, 214 N. W. 104, 106–107; Shackelford v. Dobbs, 216 Miss. 75, 61 So.2d 669; In re Simard's Estate, 98 N.H. 454, 102 A.2d 508, 511; Gorsuch v. Culbertson, Ohio Com.Pl., 90 N.E. 2d 627, 628; In re McKean's Estate, 159 Pa.Super 409, 48 A.2d 74, 76; Fain v. Fain, Tex.Civ.App., 335 S.W.2d 663; Adams v. Masterson, Tex.Civ.App., 415 S.W.2d 535, 536.

■ II. The introductory clause of "Item Three" of the codicil is almost identical to the introductory clause in "Item Three" of the will. The testatrix undertook to dispose of "all the rest, residue and remainder" of her estate. She failed to do so in the codicil. This obvious omission does not create an ambiguity which would permit the executors to produce oral testimony as to testatrix's intent. We have said: "Courts will not, from oral testimony, make a will testator perhaps intended to, but in fact did not, make." Bankers Trust Co. v. Allen, supra, 135 N.W.2d p. 611.

No Iowa case dealing with an incomplete residuary clause has been examined but many foreign authorities have dealt with similar situations. In the following cases the will contained language purporting to dispose of the residuary but it did not, in fact, dispose of all the property.

■ "Where the residuary clause itself does not make a complete disposition of the residuum, the presumption against intestacy is not applicable, and if the words of the will clearly create an intestacy, the court will not fill the void." McElroy v. Mercantile-Safe-Deposit & Trust Co., 229 Md. 276, 182 A.2d 775, 778.

In Lee v. Gaylord, 239 Mich. 274, 214 N.W. 104, 106, the testator undertook "to dispose of the residue of his estate, but in express terms only disposes of half of it". The court noted this was probably an unintentional omission. It said: "If we should write into the will what the scrivener claims to have omitted because of his brainstorm, it would be materially changed. We cannot make a new will for the testator on the parol evidence of the scrivener."

"The testator probably intended to dispose of all his property by this will. The presumption is that he did, but, in considering the will in its entirety, we are unable to so construe it as to effect that result." 214 N.W. at 107.

In Adams v. Masterson, Tex.Civ.App., 415 S.W.2d 535, 536, the testator made residuary gifts. By codicil, two gifts each of one-fourth of the remainder, were revoked. It did not otherwise dispose of this one-half of the remainder. The court said: "There is no room for construction here. The will and the codicil are unambiguous. The trial court was persuaded to increase the share given to each of the appellee-beneficiaries from one-sixth, to one-third because of a supposed intention of the testator that this be done. However, the testator expressed no such intention, and it is our view that the rules of construction may not be employed by the courts to make a disposition which is not included in the will, for 'this would amount to ascertaining the testator's intention from what he failed to say rather than from what he did say.' "

In Fain v. Fain, Tex.Civ.App., 335 S.W. 2d 663, 665, the testator while purporting to dispose of all of his estate in paragraph II of his will did not do so. Beneficiaries sought to apply the residuary clause of paragraph III, which made an alternative disposition of the property, to paragraph II. The court, in refusing to do so, said: "We realize that such construction results in testator having died intestate as to part of his property. But, where the testator, intentionally or otherwise, has failed to provide in his will for the disposition of all of his property, or of the entire quantum of his estate, the court cannot place a construction on the will not warranted by its language, but the testator must be held to have died intestate as to such property. * * * Whether testator's failure to dispose of all his property in the event he died first was intentional (knowing appellee would inherit it) or otherwise, we are unable to state except by conjecture, and courts are not permitted to go so far."

See also: In re McKean's Estate, 159 Pa.Super 409; 48 A.2d 74, 76; Holcomb v. Newton, Tex.Civ.App., 226 S.W.2d 670, 672; In re Corwin's Estate, 86 Idaho 1, 383 P.2d 339, 342.

The Missouri court has gone further than other courts noted in supplying omissions in a will if it determines testator intended to dispose of all of his property. Mercantile Trust Co. v. Sowell, Mo., 359 S.W.2d 719; Mercantile-Commerce Bank & Trust Co. v. Binowitz, Mo., 283 S.W.2d 893; Riesmeyer v. St. Louis Union Trust Co., Mo., 180 S.W.2d 60. This approach has been criticized, 51 Iowa L.Rev. 87–106. The writer there states: "What predictability the law has achieved in this area, based on standardization of the meaning of symbols, should not be forfeited to get the 'right' result in an occasional hardship case, with the concomitant invitation to illfounded claims and litigation." P. 106.

■ The language of the will and codicil is clear and unambiguous. They may fail to express the intent of the testatrix, but we cannot, under the guise of construction, rewrite them to do for testatrix that which she failed to do on her own behalf.

■ III. Appellee also relies on the equitable doctrine of Dependent Relative Revocation. "It is a doctrine of presumed intention, which has been given effect by the courts in their constant effort to ascertain the real intention of the testator; the theory being that the change in the old will and the revocation thereof would not have been made unless effect could be given to the new will. The revocation is considered as having been made on the mistaken belief in some fact, and the courts hold that it is immaterial that the mistake be one of fact or of law. While there are cases holding that the doctrine should not be given effect where there is an express revocation, the better opinion is that the doctrine still applies, since it will be inferred that the earlier will was revoked only to give effect to the later one, and if, for any cause, the later will is inoperative, the earlier will will take effect." Blackford v. Anderson, 226 Iowa 1138, 1159, 286 N.W. 735, 747.

■ Appellees believe the rule would apply if the evidence disclosed the scrivener mistakenly omitted provisions from the codicil. However, an analysis of many cases and secondary authorities convinces us the rule is not applicable here. The foundation for the rule is the failure of a subsequent will or codicil, either entirely or in some of its provisions, to have any legal effect. It has been applied when the second instrument was not properly executed, violated the mortmain statutes or the rule against perpetuities or was void for uncertainty. We have found no suggestion in any authority that the doctrine can be applied where, as here, the codicil is valid and can be carried out in its entirety.

The Blackford case, supra, which is one of the leading cases in the country subscribing to this doctrine, involved a will and two codicils. There was no express revocation and all three instruments con-

firmed testator's intention that his estate should go to Lee County for secondary road construction. The second codicil contained a provision which was invalid because it attempted to give the executor control over road construction when the statutory authority was vested in the board of supervisors. The court correctly held the second codicil containing the invalid provision did not revoke the will or first codicil.

The California Court applied the doctrine in In re Kaufman's Estate, 25 Cal. 2d 854, 155 P.2d 831, where two wills made identical gifts to a church and the second will which revoked the first was "inoperative" under the mortmain statute as the testator died within 30 days of its execution.

In Flanders v. White, 142 Or. 375, 18 P.2d 823, the doctrine was applied when a will could not be found after testator's death. Evidence clearly showed he had destroyed the will under the mistaken belief that a debit-credit plan he substituted for the will, which would have resulted in the same bequests as the will, was valid. The court held the revocation by destruction was dependent on the validity of his book entry scheme and admitted the lost will to probate.

In Stewart v. Johnson, 142 Fla. 425, 194 So. 869, a second will was invalid because it was not properly witnessed. The court examined the circumstances and held the bequests in the two instruments were similar enough that the revocation of the first was dependent upon the validity of the second and admitted the first will to probate.

Secondary authorities all refer to the failure or invalidity of the second instrument. They do not even hint that the doctrine may be applied in a situation in which the codicil is valid and operative but through mistake or omission does not express the testator's true intent. Page on Wills, Vol. 2, §§ 21.57, 21.59, 21.60, 21.63, 21.64, 21.65; Dependent Relative Revocation by Joseph Warren, 33 Harv.L.R. 337; 95 C.J.S. Wills § 267; 57 Am.Jur., Wills, §§ 514–518; Anno: 28 A.L.R.2d 528; 59 A.L.R.2d, §§ 14a, 25a, 25b.

In In re Braun's Estate, 358 Pa. 271, 56 A.2d 201, 203–204, the doctrine was applied to reinstate a will which gave $50,000 to testator's daughter in trust when a codicil provided: "I hereby revoke the Trust Fund (in favor of daughter Mildred) and substitute a lump sum of —— dollars in cash." There was an omission in the codicil, but the omission was such as to render the codicil "inoperative" because of uncertainty.

Here the codicil is perfectly valid and wholly operative. While it may not do what the testatrix actually desired, there is nothing we can do. The doctrine should not be extended to permit evidence which would, in effect, rewrite testatrix's will.

We are compelled to hold testatrix failed to dispose of the $2500 added by codicil to the trust for the benefit of Lea Fairley at the termination of said trust and the same passes as intestate property. She also died intestate as to two-thirds of the remainder of her estate less said $2500 which should be distributed to her heirs at law.

For the reasons stated, the decision of the trial court is reversed and the case is remanded for judgment in accordance herewith.

All Justices concur.