50 N.J. Super. 582 (1958)
143 A.2d 243
IN THE MATTER OF THE ESTATE OF OGDEN A. KANTNER, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 1958.
Decided June 17, 1958.
*584 Mr. Richard J.S. Barlow, Jr., guardian ad litem, appellant, argued the cause pro se.
Mr. Ralph S. Mason argued the cause for respondents (Messrs. Mason, Griffin and Moore and Mr. Kester R. Pierson, attorneys).
Before Judges GOLDMANN, FREUND and CONFORD.
The opinion of the court was delivered by CONFORD, J.A.D.
This is a contest between the executors of the estate of Ogden A. Kantner, who are the Trenton Banking Company and Arlene M. Kantner, widow of the decedent, and the guardian ad litem of minor children of the Kantners, who by the will are given certain trust interests in the residue of the estate (as is also the widow), after the creation of a trust estate for the widow alone.
The decedent died October 10, 1954. In December 1957 the executors, who were also trustees under the will, petitioned the Mercer County Court for leave to distribute to the widow in satisfaction of her sole trust legacy certain shares of common stock of the United Clay Mines Corporation, a non-board security held by the executors, but at their value determined for federal estate tax purposes as of the date of testator's death, which was $7.20 per share. The guardian ad litem resisted the application, principally on the ground that the distribution should be made at the much higher market value of the shares as of the date of distribution. Indicative of the increased value was a public sale of 1,200 of the shares by the executors on April 12, 1957, which brought an average price of $33.4266 per share. An acceptance *585 of that position would obviously decrease the number of shares to be distributed to the widow and increase the value of the trusts in which the minors have an interest. The County Court ruled in favor of the executors. The guardian ad litem appeals.
The decedent's will was executed February 12, 1954. The first two articles provide for the payment of debts and funeral expenses and for the bequest to the wife of household furnishings and personal effects. The Third Article of the will reads, in part, as follows:
"Third: If my wife, ARLENE M. KANTNER, survives me, I direct my Executors and Trustees to set aside a portion of my estate equal in value to (a) one-half of the value of my adjusted gross estate (gross taxable estate less funeral and administration expenses and claims and debts but before the deduction of estate or inheritance taxes) as finally determined for Federal estate tax purposes, less (b) the value of all interests in property, if any, which pass or have passed to my wife under other provisions of this Will or otherwise than under this Will, but only to the extent that such interests are for the purposes of the Federal estate tax included in determining my gross taxable estate and are allowable as a marital deduction. All values shall be those finally determined for Federal Estate tax purposes.

* * * * * * * *
Notwithstanding anything to the contrary contained in this my Will, I direct (a) that in establishing this trust for my wife there shall not be allocated to the trust any property or the proceeds of any property which would not qualify for the marital deduction allowable in determining the Federal estate tax on my estate * * *."
This article also provides that the designated portion of the estate be placed in trust, net income to be payable to the wife for life, and also, in her sole discretion, any portion of the principal designated by her at any time; any balance remaining at her death to go as appointed by her will.
The Fourth Article of the will begins as follows:
"Fourth: All the rest, residue and remainder of my property, both real and personal of whatever nature and wherever situate, I give, devise and bequeath to my Trustees hereinafter named in trust nevertheless to hold, manage, control, sell, invest and reinvest the same and to collect the income therefrom, and after deducting from said income all necessary and reasonably proper expenses and charges, to pay the net income therefrom as follows:"
*586 Then follow provisions for the net income of the thus created trust to go to the wife for life, subject to the stipulation that when any child reaches 21 years of age one half of the net income be divided in as many shares as there are surviving children, each child upon attaining 21 to receive an equal share of the said one half of the net income, and, at 30 years of age, an equal part of one half of the principal of the trust.
Article Sixth (n) provides:
"(n) In any case in which my said Executors and Trustees are required to divide the principal of my estate into parts or shares, or to distribute the same in parts or shares, or in whole, they are authorized and empowered in their sole discretion to make such division or distribution in kind, or partly in kind and partly in money, and the judgment of my said Executors and Trustees concerning the propriety thereof and the relative value, for the purpose of division or distribution, of the property and securities so divided or distributed, shall be binding and conclusive upon all beneficiaries interested therein."
Article Sixth (p) is as follows:
"(p) The two trusts hereinabove created by Articles `Third' and Fourth' shall be administered as entirely separate and independent trusts and shall not own in common any securities nor shall the funds thereof be mingled or held in common in any way, but each such trust shall have its own separate funds kept entirely separate and apart from the funds of the other. If any of the foregoing provisions of this Article `Sixth' would, if effective as to the trust hereinabove created by article `Third' disqualify, in whole or in part, my estate from claiming the `Marital Deduction' provided in and by the Internal Revenue Laws of the United States in effect at the time of my death or any similar deductions, it is my intent that such provision shall not be applicable to said trust hereinabove created by Article `Third'."
The petition filed in 1957 by the executors as aforesaid was occasioned by Mrs. Kantner's election to have the entirety of the portion of the estate which was to constitute the principal of the paragraph Third trust advanced to her forthwith. The County Court ordered that distribution thereof be made to Mrs. Kantner entirely in United Clay Mines Corporation stock, and adjudicated that *587 "by the terms of Article Third of the Will * * * the Testator intended and did devise and bequeath 50% of his residuary estate (adjusted gross estate) to his wife * * *, of which 30.413% has passed or been distributed to her and 19.587% remains to be distributed to her. There shall be distributed to Arlene M. Kantner in satisfaction of the said balance of 19.587% of the residuary estate 7781 shares of United Clay Mines Corporation stock which represents said percentage of 19.587% of the residuary estate [if the shares are valued at $7.20 per share].
The balance of the residuary estate (adjusted gross estate) remaining in the hands of the accountant * * *"
was ordered to be distributed to the trustees pursuant to the Fourth Article of the will.
The adjusted gross estate as finally determined by the federal Internal Revenue Service was $286,005.82. This included $86,983.14, most of which passed to the wife outside of the will (insurance policies payable to the wife and jointly owned property), the remainder being miscellaneous items of personal property bequeathed to the wife under the Second Article of the will. The bulk of the estate was in United Clay Mines Corporation stock.
The position of the guardian ad litem is that the trial court erred in holding the Article Third trust a part of the residuary estate; that by the express language of the will it is only the Article Fourth trust which is constituted out of the residuary estate; that Article Third of the will provides a bequest to the wife which is a general legacy of a definite dollar sum, albeit determinable by formula; and that distribution of that legacy, to the extent made from securities, was required to be effected at the value of the securities as of the date of distribution, not the date of death. We are in accord with this position, regarding it as compelled by the language of the will, and fortified by the plain intent of the disposition to the wife to minimize federal estate taxes both to the decedent and to the estate of his wife at her death.
Under the Federal Revenue Act of 1948, § 361, 1939 Int. Rev. Code, § 812(e), 26 U.S.C.A. § 812(e) (1954 Int. Rev. Code, § 2056, 26 U.S.C.A. § 2056), a method of substantial reduction of federal estate taxes was afforded, *588 now commonly referred to as the marital tax deduction. In substance, this allows as a deduction from the estate of the decedent an amount equal to the value of any interest in property which passes or has passed from the decedent to the wife, but not exceeding 50% of the adjusted gross estate. Included in the qualifying 50% is, inter alia, property jointly owned and passing to the wife by survivorship and the proceeds of insurance on the life of the decedent payable to the wife. Since the adoption of the marital tax deduction provisions there has been a wealth of technical literature dealing with the subject and with ways and means of using the deduction in the drafting of wills to minimize federal estate taxes not only on the estate of the principal decedent but also on the prospective estate of the surviving spouse. See, e.g., Casner, "Estate Planning  Marital Deduction Provisions of Trusts," 64 Harv. L. Rev. 582 (1951); Roland K. Smith, "Marital Deduction in Estate Planning," 32 Taxes 15 (1954); Kiley and Golden, "A Residue Formula for Maximum Marital Deduction," 89 Trusts and Estates 744 (1950); Furman Smith, "Marital Deduction Values," 90 Trusts and Estates 16 (1951).
All of the literature recognizes that there are two principal types of testamentary disposition for effectuating the marital deduction, the "pecuniary type formula" and the "residue formula." There are also sometimes "nonformula pecuniary gifts" and "nonformula fractional share gifts of residue," Casner, op. cit., supra (64 Harv. L. Rev., at pp. 584, 585). The latter are gifts of stated dollar amounts, whether as general legacies or as shares in the residuary estate, the disadvantage being that the amount fixed would generally not be the exact amount of maximum allowable deduction. For some of the advantages of nonformula provisions, see Trachtman, Estate Planning (P.L.I. 1955), pp. 31-40. The advantage of the "formula" gifts was that they were worded so as, by definition, to fix an amount exactly equal to the maximum (or a percentage thereof, where desired) allowable deduction. The prime advantage of the formula gift, where worded to grant the full 50% of adjusted gross *589 estate, is that while it accomplishes the maximum deduction for purposes of the federal estate tax on the estate of the primary decedent, it also minimizes the prospective estate tax on the estate of the surviving spouse when she (or he) dies, by keeping the gift to her as low as possible consistent with obtaining the maximum saving on the estate of the primary decedent.
For purposes of determination of the present case, it is particularly significant that all of the writings agree that the basic difference between the use of the pecuniary type formula and the residuary formula is that (except when otherwise provided in the will) under the former, the marital deduction trust (or gift) will receive, in case of a distribution in kind, assets worth the amount of the deduction as of the time of distribution, whereas, under the latter, the trusts will receive the formula fractional share of whatever assets are available in the residuary estate at the time of distribution. Casner, op. cit., supra (64 Harv. L. Rev., at pp. 594, 596); Roland K. Smith, op. cit., supra (32 Taxes, at pp. 16-18). The stated result in the case of the pecuniary gift is a consequence of the general rule that, in the absence of a contrary provision in a will, when distribution is made in kind in satisfaction of a general legacy the property used is valued for this purpose as of the date of distribution. 3 Scott, Trusts (2d ed. 1956), § 347.6, p. 2542; In re Simpson's Estate, 32 N.J. Super. 85 (Cty. Ct. 1954); In re Brown's Estate, 112 N.J. Eq. 499 (Prerog. Ct. 1933) (where the rule was applied to a case where the securities had depreciated by the time of distribution).
In construing this will we are obliged to ascertain and effectuate the plan and purpose of the testator as gathered from the language of his entire will and the attendant circumstances. Busch v. Plews, 12 N.J. 352, 358 (1933). "Our main concern is not so much with what the testator meant to say as it is to determine what he meant by what he did say." In re Schmidt's Estate, 46 N.J. Super. 369, 381 (App. Div. 1957). Here the testator, in Article Third of the will, used language couched in terms practically the *590 prototype of what the authorities cited above denominate the pecuniary type formula for a gift to accomplish the exact maximum marital deduction, no more, no less. Both sides in this case agree that the draftsman of this will wrote it with an eye toward the full benefits of the marital deduction. He was presumably familiar with the techniques and know-how in this field. See In re Pleasonton's Estate, 45 N.J. Super. 154, 160, 161 (App. Div. 1957). As though to eliminate the slightest doubt that the marital deduction gift was not intended to be of the residue formula type is the express direction in Article Fourth of the will that the trust there provided for should be constituted from the "rest, residue and remainder of my property," the conventional verbiage for reference to the residuary estate. It would be inexcusable disregard of the unequivocal cast of the document to construe the gift in the Third Article of the will as a disposition of the residuary estate or part of it. Courts lean against construing legacies as specific. Busch v. Plews, supra (12 N.J. at page 356). Here policy and express language make common cause for the construction of Article Third as a general legacy in a fixed amount determinable by formula. See In re Reben's Will, 115 N.Y.S.2d 228, 233 (Sur. Ct. 1952); In re Goldman's Estate, 145 N.Y.S.2d 919, 922 (Sur. Ct. 1955).
The executors argue that a testamentary intent for distribution at the value of the shares of stock as finally determined for federal estate tax purposes is expressed in the last sentence of the first paragraph of Article Third, "All values shall be those finally determined for Federal Estate tax purposes." We do not agree. Such a use of this sentence would be lifting it out of the context of the entirety of the paragraph in which it is found. The intent is obviously that in the formulation of the fraction of the estate measuring the amount of the legacy granted all values referred to in the preceding part of the paragraph should for the sake of accomplishment of the exact amount of the maximum allowable marital deduction be uniformly taken in the amounts allowed for federal estate tax purposes. The provision can *591 have no rational application to the ultimate matter of distribution of assets in satisfaction of the legacy. Compare the instant provision with the language suggested by Casner, op. cit., supra (64 Harv. L. Rev., at p. 195) to accomplish the result contended for by the executors.
Further support from the structure of the will for the conclusion we have arrived at, if needed, is supplied by Article Tenth, which imposes all estate and inheritance taxes exclusively against "my residuary estate." If, as the executors contend, Articles Third and Fourth are both residuary clauses of the will, estate taxes would be payable ratably from the legacy given by Article Third, with the consequence under the federal revenue act that since the net amount passing to the wife would be reduced, the amount of the marital deduction would be likewise reduced, in frustration of the testator's obvious intent that the maximum allowable marital deduction be achieved.
The executors make the final point that acceptance of the position of the guardian ad litem would involve an obligation by the executors for federal capital gains income taxes as to the appreciation in value of the shares over the amounts fixed for estate tax purposes. See U.S. Treas. Reg., § 1.1014-4(a) (3). Int. Rev. Rul. 56-270, 1956-1 Cum. Bull. 325. This argument ab inconvenienti can play no proper part in the construction of testamentary provisions which are clear and compelling, if at all relevant. Moreover, if entitled to weight, it is countered by the consideration that under the executors' position the consequent increase in the value of the wife's estate makes it subject to larger estate taxes on her death (subject to exemptions and dispositions during life), see Lewis, Estate Tax (P.L.I. 1957), pp. 151, 174, a result presumably contrary to the decedent's purpose in keeping the legacy by formula at an amount no greater than the maximum marital deduction allowable. The executors' position also involves an increased capital gains income tax to the wife in the event of her sale of the stock by giving her a lower basis therefor than if she takes the stock at the higher figure advanced by the guardian ad litem. See Kenan *592 v. Commissioner of Internal Revenue, 114 F.2d 217, 220 (2 Cir. 1940).
Properly, the will before us should be construed without regard to post hac considerations concerning changes in the value of the stock after the decedent's death. If these shares of stock had declined rather than appreciated in value after the death of the testator, the widow-executrix would be the first to insist (and justly) that she should at distribution be given the number of shares necessary to make up the dollar amount of the legacy at values as of the date of distribution. The rule must cut both ways.
The guardian ad litem made the additional contention in the County Court, and repeats it in the body of his brief before us, that the distribution to the wife not be confined to the shares of United Clay Mines Corporation but should also include a proportionate share of the other assets held by the estate at the time of filing the account. The assertion is not developed by supporting reasons and the issue is not mentioned at all in the Statement of Questions Involved. See R.R. 1:7-1(c). The will gives full and unfettered jurisdiction in this regard to the executors and trustees "in their sole discretion" and no good reason is advanced why the direction should be ignored.
To the extent that the judgment requires valuation of the shares of stock at the $7.20 figure for purposes of distribution to the wife, it is modified with directions that the valuation be fixed on the basis of $33.4266 per share, if satisfactory to both sides, otherwise at such fair and full value as the shares may be determined to have had as of the date of application by the executors and trustees for approval of their account and for distribution. In all other respects the judgment is affirmed.