24 Mich. App. 158 (1970)
180 N.W.2d 82
In re PARKER ESTATE
SQUIERS
v.
PARKER
Docket No. 7,269.
Michigan Court of Appeals.
Decided May 27, 1970.
Leave to appeal denied July 31, 1970.
*159 Hill, Lewis, Adams, Goodrich & Tait (Robert B. Webster, of counsel), for Dorothea Squiers.
Welday, Goldstone, Boila & Ott, for Myrtle Parker, Norman L. Parker and Frank D. Parker.
Before: T.M. BURNS, P.J., and HOLBROOK and BRONSON, JJ.
Leave to appeal denied July 31, 1970. 383 Mich 812.
BRONSON, J.
Decedent, John W. Parker, died September 1, 1964, survived by his wife, Myrtle; two children by their marriage, Frank D. Parker and Marion Joan Maurer; a son by a former marriage, Norman L. Parker; and a stepdaughter, Dorothea Squiers, Myrtle's daughter by a former marriage.
On October 23, 1964, decedent's last will was admitted to probate in Wayne County. The will contains two paragraphs which are the subject of this litigation.
Paragraph IV provides:
"I give, devise, and bequeath outright and absolutely to my beloved wife, Myrtle Parker, if she shall survive me, such portion of my estate which, when added to all other property included in the amount allowed as the marital deduction, shall result in an amount equal to one-half of my adjusted gross estate as defined by the internal revenue laws of the United States effective at the time of my *160 death and as determined for Federal estate tax purposes."
Paragraph V provides:
"I give, devise, and bequeath to my children, Norman L. Parker, Frank D. Parker, Marion Joan Maurer, and Dorothea Squiers (the daughter of my wife by previous marriage), share and share alike, the undivided one-half of my estate remaining after such portion of my estate passing to my wife, Myrtle Parker, under this my will has been computed and determined, namely, all the rest, residue, and remainder of my estate, real, personal, and mixed, and wherever situate, after allowance or payment therefrom of all inheritance, estate, and succession taxes and charges of every description as provided in paragraph II hereof to have and to hold absolutely unto themselves."
On August 30, 1967, the co-executors, Norman L. Parker and Dorothea Squiers, petitioned the probate court for construction of the will because of a disagreement among the heirs as to the legal effect of the above paragraphs on the distribution of assets. The daughters contended that the paragraphs constituted a general pecuniary bequest to the widow of a fixed dollar amount, computed in accordance with the formula. Mrs. Parker and the sons contended that the paragraphs constituted an undivided fractional residuary bequest to the widow of a portion of the residuary assets of the probate estate, computed in accordance with the formula.
On November 17, 1967, the probate judge entered an order construing paragraphs IV and V according to defendants' contention, i.e., that the will left a fractional residuary bequest to the widow. The probate judge denied admission into evidence of certain depositions going to the circumstances present at the time testator executed the will. Deponents were *161 decedent's attorney who drafted the will, his accountant, and a family friend.
Plaintiff appealed to circuit court. Defendants cross-appealed as to that part of the order denying admission of depositions into evidence. The Wayne County Circuit Court affirmed the probate court, holding that the widow should receive one-half of decedent's probate estate. The circuit court held it proper to consider evidence of testator's circumstances at the time of execution of the will and did admit certain depositions and testimony on the point.
Plaintiff appeals to this Court by application for leave to appeal as required by MCLA § 600.308 (Stat Ann 1970 Cum Supp § 27A.308) and GCR 1963, 801.3(1) and GCR 1963, 806.1, as amended February 13, 1969, effective immediately (381 Mich lxxvii and lxxviii).
Paragraphs IV and V of decedent's will are bequests designed to take advantage of the marital deduction allowed by Federal estate tax laws.
Volume 34 Am Jur 2d, 1970 Federal Taxation, § 8683, p 797, comments on the deduction and the draftsman's devices utilized to achieve it.
"Because of the importance of the marital deduction in reducing estate taxes, it is frequently the testator's wish to take maximum advantage of it. Changes in composition or fluctuations in value of the estate's property make it difficult to determine in advance the maximum deductible amount (50% of the adjusted gross estate) but no more or no less. The use of formula bequests, expressed in terms of the maximum marital deduction for estate tax purposes or 50% of the adjusted gross estate, is designed to overcome this difficulty by assuring the maximum deduction regardless of changes which take place in the estate's assets.
*162 "There are two main types of formula bequests: (1) pecuniary bequest which is phrased in terms of an amount equal to the maximum marital deduction after reduction by the value of other property passing either under or outside the will which qualifies for the marital deduction, and (2) the fraction of the residue bequest which is phrased in terms of that fractional share of the residue of the estate which will result in the maximum marital deduction when added to other qualifying interests passing both under or outside the will. The fraction of the residue bequest is also phrased in terms of a numerator equaling the maximum marital deduction less other qualifying interests and a denominator equal to the residuary estate.
"The fractional share of the residue formula bequest permits the widow to share in any appreciation in the value of property between date of death and the date of distribution. The pecuniary bequest may or may not."
Decedent's estate consisted primarily of 36,400 shares of Parker Majestic Co., formerly Majestic Tool & Manufacturing Co. Defendants, decedent's wife and sons, owned the remaining 3,600 shares. The estate at death also included a marital home owned by the entireties, $50,000 life insurance payable to decedent's estate and a $7,500 life insurance policy payable to his wife.
The stock proved to be the source of controversy. In a scholarly and concise opinion, Wayne County Circuit Judge Montante explained the dispute as follows:
"Whether the interest of the widow is pecuniary or fractional is important, because of the marked increase in value of decedent's estate's assets during probate. If pecuniary  that is to say, a fixed dollar amount  the bequest will be unaffected by fluctuation of asset values during probate. If the bequest *163 is fractional  that is to say, a percentage of the decedent's property on the date of distribution  the widow's interest will be affected by appreciation or depreciation of asset values during probate. In this case the problem is of considerable importance, because of the benefit to the widow in the one instance and the loss to her on a finding otherwise." Opinion of court, pp 6, 7.
The case principally relied upon by plaintiff to support her contention that the testator intended a pecuniary legacy, i.e., one having a fixed dollar amount, is In re Estate of Kantner (1958), 50 NJ Super 582 (143 A2d 243). That case contains a preliminary comment helpful to an understanding of the present controversy:
"Under the Federal Revenue Act of 1948, § 361 [citation omitted], a method of substantial reduction of federal estate taxes was afforded, now commonly referred to as the marital tax deduction. In substance, this allows as a deduction from the estate of the decedent an amount equal to the value of any interest in property which passes or has passed from the decedent to the wife, but not exceeding 50% of the adjusted gross estate. Included in the qualifying 50% is, inter alia, property jointly owned and passing to the wife by survivorship and the proceeds of insurance on the life of the decedent payable to the wife. Since the adoption of the marital tax deduction provisions there has been a wealth of technical literature dealing with the subject and with ways and means of using the deduction in the drafting of wills to minimize Federal estate taxes not only on the estate of the principal decedent but also on the prospective estate of the surviving spouse. * * *
"All of the literature recognizes that there are two principal types of testamentary disposition for effectuating the marital deduction, the `pecuniary type formula' and the `residue formula.' * * * *164 The advantage of the `formula' gifts was that they were worded so as, by definition, to fix an amount exactly equal to the maximum (or a percentage thereof, where desired) allowable deduction. The prime advantage of the formula gift, where worded to grant the full 50% of adjusted gross estate, is that while it accomplishes the maximum deduction for purposes of the federal estate tax on the estate of the primary decedent, it also minimizes the prospective estate tax on the estate of the surviving spouse when she (or he) dies, by keeping the gift to her as low as possible consistent with obtaining the maximum saving on the estate of the primary decedent." 143 A2d at 246, 247.
Cases construing marital deduction clauses emphasize the particular words and phrases used in order to determine whether the testator or settlor intended a pecuniary legacy of a fixed sum or a fractional residuary bequest. Thus, "portion" or "portion of my estate" have been held to indicate an intention to create a fractional bequest. In re Nicholai's Estate (1962), 232 Or 105 (373 P2d 967, 969). Similarly, "part" demonstrates creation of a fractional interest. Matter of Bing (1960), 23 Misc 2d 326 (200 NYS2d 913). On the other hand, the phrases, "a portion of my estate" and "so much of my estate" were held to establish pecuniary legacies of fixed dollar amounts in In re Estate of Kantner, supra, and In re Althouse's Estate (1961), 404 Pa 412 (172 A2d 146). The use of the word "amount" is said to characterize a pecuniary bequest and the phrase "fractional share" obviously suggests a fraction of the residue bequest. 34 Am Jur 2d, 1970 Federal Taxation, § 8683, p 797.
In addition, the placement of the residuary clause, first or after the marital deduction clause, is sometimes considered significant. In re Estate of Kantner, supra, considered it important that the marital *165 deduction clause preceded the clause setting up the residuary estate.
However, the "words and phrases" test is not a satisfactory one. As noted, the phrase "portion of my estate" was held to establish a pecuniary bequest in Kantner, supra, and a fractional bequest in Nicholai's Estate, supra. Moreover, the particular words and phrases appear in differently worded clauses and must be construed in the context of the particular clause under consideration.[*]
In the present case, decedent's will uses words and phrases suggestive of each type of bequest. The one leading indication in decedent's will of an intention to create a fractional share of the residue bequest is his reference in paragraph V to "the undivided one-half of my estate remaining after such portion of my estate passing to my wife * * * has been computed and determined." This language certainly supports defendants' contention that decedent intended a simple division of one-half of his estate to go to his wife and the other one-half to go to his children. That language was persuasive in the lower court's decision.
*166 Only because of the testator's intention as indicated by his reference to "the undivided one-half of my estate" can it be said that the trial court correctly construed the disputed paragraphs of the will. Otherwise, the will admits of either construction.
Judge Montante in his opinion stated:
"In order to determine testator's true intention, paragraphs IV and V must be read together. Appellants contend we may look only to the `four corners' of the will and nothing more. Appellees say that the testator's circumstances and property at the time of the execution of his will must be considered in determining which of two possible constructions was intended by the testator. We agreed with appellees' contention and thus permitted testimony and exhibits to be received during the trial, over appellants' strenuous objections.
"Were appellants' objections valid, and should all of the testimony and exhibits have been excluded from consideration in rendering the court's decision construing will?
"As previously pointed out, appellants' cited case of Kantner holds admissible `circumstances attendant' execution of will. We have, therefore, recognition even in the cases cited by appellants that it is proper to consider evidence dehors will.
"As early as 1879, the Supreme Court of Michigan, in Tuxbury v. French, 41 Mich 7, had occasion to remark:
"`* * * The general principle is not to be overlooked that the words of a testator, like those of other persons, naturally refer to the circumstances about him at the time, and that in order to have his outlook and all reasonable means of explanation of his words, not in addition or contradiction to them, but to disclose his use of them, a knowledge of these circumstances is essential.' (p 11)
*167 "`The case presented is one which calls for extrinsic matter to explain what is written; not to alter or destroy it. It is not an occasion offered to witnesses to insert something the testator left out or to cut out something he put in. What is called for is that the court shall be placed in the situation the testator occupied when he made the will, and in that situation of advantage read the words as written, and then interpret and apply them, unless there is such an uncertainty that the law is fairly baffled.' (p 12)
"Where there is obscurity or ambiguity in the language so that the intent of the testator becomes doubtful, it is proper, therefore, to permit extrinsic evidence to discover the testator's intent  In re Warmbier's Estate [1933], 262 Mich 160  and to consider the particular bequest in question as well as the language of the entire will, `together with circumstances surrounding the testator at the time it was executed, including his relation to the legatees'  Morrow v. Detroit Trust Company [1951], 330 Mich 635, 645. Accord: Mills v. Butler [1961], 364 Mich 422; and the recent cases of In re Charlton Estate [1968], 9 Mich App 625, and In re Willey Estate [1967], 9 Mich App 245; and In re Wilson Estate [1962], 367 Mich 143 (Sturges v. Brown).
"Neither Lee v. Gaylord [1927], 239 Mich 274, nor Detroit Wabeek Bank & Trust Company v. City of Adrian [1957], 349 Mich 136, cited by appellants, rejects the view that evidence dehors the will is admissible, as long as it is only to explain the circumstances surrounding the making of the will in order to explain the terms actually used in the will. In Lee, supra, the court quoted from Waldron v. Waldron [1881], 45 Mich 350, as follows:
"`"Oral evidence cannot be introduced to explain the intent, except as it may bring before the court such circumstances surrounding the making of the will as may be necessary to an understanding of the terms employed. The evidence of the scrivener as to statements made to him preliminary to the drawing *168 of the will must, therefore, be rejected. To act upon these would be to frame a new will for the testator, based upon an intent which we should reach upon parol evidence, but which she failed to express in legal form."' (Emphasis supplied.)"
The circuit judge therefore felt that it was necessary to view the will in the light of surrounding conditions at the time the will was made in order to understand and therefore fully implement the testator's intentions. Taking such circumstances into consideration, the circuit court held that:
"[I]t is clear to us that the testator intended to give his wife such portion of his estate as, when added to qualified non-probate property passing to her outside the will, resulted in a fractional amount of one-half of his adjusted gross estate as defined by the internal revenue laws effective at the time of his death and as determined for Federal estate tax purposes; and that his children were to receive, share and share alike, the remainder, after payment therefrom of all taxes, charges and administrative expenses of the estate."
The circuit court felt that the matter of the construction of the will of John Parker "is before this court and that I am asked on this appeal to give my construction to it." Judge Montante further stated:
"In making this decision, however, I wish to amplify it further, if I may, because without such amplification, it is the belief of the court that there may be endless litigation between appellants and appellees regarding further construction, in view of the enhanced value of the property of the estate from the date of death to the date of distribution and because of the contention seemingly made by the appellees that this court must so construe the John W. Parker will as to require payment of all debts, administration expenses, inheritance taxes, and so *169 forth, solely from the share of the interest of the children.
"Gentlemen, pursuing my opinion further, therefore, it is the decision of the court on construction of the John W. Parker will as follows:
"Paragraph IV has been referred to as a `pre-residuary clause.' The use of that expression was simply to discuss the formula suggested by Covey in order to determine whether a fractional interest or a pecuniary bequest was intended by the language used by the testator. From my examination of the entire will, in the light of the circumstances existing at the time the will was drafted, it is the opinion of the court that it would be a misnomer to refer to paragraph IV as a pre-residuary provision. On the contrary, my careful examination of the text in Mr. Covey's bok reveals that a fractional share of a residue provision may be of two types, and it is my conclusion that paragraph IV is nothing more than part of the residuary estate.
"It is my view that nothing but confusion would exist in this case if there was an attempt made to compute what the widow had coming and what the children had coming if I were to adopt the suggestion made by appellees that debts, administrative expenses, and so forth, were to be deducted solely out of the share of the children. I don't see it that way."
We find no error in the decision of the Wayne County Circuit Court. Affirmed.
All concurred.
NOTES
[*] The circuit judge noted, and we agree, that

"Reviewing courts have repeatedly recognized the lack of value of will precedents, because the precedent established in any given case is valueless except in another one precisely like it. `Such matching of circumstances seldom occurs.' Callaghan's Michigan Pleading and Practice, Section 99.50, p 331.
* * *
"Examining the language in paragraph IV of the Parker will, `such portion of my estate which, when added to all other property included in the amount allowed as the marital deduction, shall result in an amount equal to one-half of my adjusted gross estate,' it cannot be doubted that the word `portion' has a certain fractional flavor to it, while the word `amount' would appear to indicate a pecuniary bequest was intended. The use of both words in a single bequest provision has led to litigation to determine whether a legacy or fractional share was intended. See Kantner and Nicolai for opposite results cited above. The weight of authority, however, seems to side with appellants in this situation, although, admittedly, there is a split and there are no Michigan cases construing the precise provision."