267 So.2d 158

**Helen Wallace DAVIS**

v.

**John D. DAVIS, Jr., et al.**

**8 Div. 451.**

Supreme Court of Alabama.

Sept. 28, 1972.

314

Robert B. Donworth, Jr., and Bradley, Arant, Rose & White, Birmingham, Caddell, Shanks, Harris & Moores, Decatur, for appellant.

Allen D. Rushton and William G. Somerville, Jr., Birmingham, for appellee Cassandra Davis Dowling.

Julian Harris and Norman W. Harris, Jr., Decatur, for appellees John D. Davis, Jr., individually, and John D. Davis, Jr., and J. T. Whitman as executors.

J. Robert Miller, Huntsville, for appellee, Ella Darwin Davis Perkins.

**316**

HEFLIN, Chief Justice.

Appellant Helen Wallace Davis, widow of John D. Davis, Sr., appeals from a decree which held that the part of his estate passing to her under his will was subject to a share of state and federal estate taxes. Proceedings were brought seeking construction of the will and declaratory instructions as to whether or not a proportionate part of the estate taxes should be paid from the widow's share.

In the proceedings below, the complainants were the executors, John D. Davis, Jr. and J. T. Whitman, and John D. Davis, Jr., individually. The respondents were appellant Helen Wallace Davis and appellees Cassandra Davis Dowling and Ella Darwin Davis Perkins (daughters of the testator). After demurrers were overruled to the amended complaint, the respondents filed their answers, with appellant-respondent Helen Davis incorporating a cross-bill in her answer. After the court sustained the demurrers to the widow's cross-bill the trial court proceeded to a hearing.

In the trial below and on this appeal, the appellant-respondent Helen Davis is pitted against the daughters Cassandra Dowling and Darwin Perkins. The executors and John D. Davis, Jr. assume non-adversary roles, seeking the correct approach.

Most of the facts were stipulated. John D. Davis, Sr., a resident of Decatur, died December 29, 1969, leaving a valid will dated November 9, 1962, which was duly probated. He was survived by his widow, Helen Davis, and his three children born of his divorced first wife.

■ The demurrers to the bill of complaint as last amended were properly overruled. In the action below the executors sought a declaratory judgment and construction of the will with instructions from the court as to whether or not the widow should bear a share of the estate tax based upon conflicting contentions of the widow and the daughters. The bill as amended alleged that the "widow is contending that her share is not to pay any part of the estate tax and Cassandra Davis Dowling and Darwin Davis Perkins, the children of the said decedent, are contending that the widow's share is to bear part of the tax." This statement sufficiently states the nature of the conflict so as to meet the requirement that a "justiciable controversy" be alleged. Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11. See also Bell v. Killian, 256 Ala. 24, 53 So.2d 604.

■ Likewise the demurrers to the cross-bill brought by appellant-respondent Helen Davis were correctly sustained. The general rule that a cross-bill may not be maintained if the respondent can obtain all the relief to which he is entitled under his answer is certainly applicable. Chafin v. Chafin, 254 Ala. 36, 47 So.2d 202. The cross-bill's only addition to the facts was of conversations between the testator and the scrivener of the will (an attorney). These

additive allegations are not deemed to require the maintenance of the cross-bill as the testimony concerning such could have been and, in fact, was introduced as part of Helen Davis' evidence under the original bill of complaint (The evidence was received by the trial court under the equity rule which allows deferred determination as to its admissibility). The effect of such evidence would not vary the nature of the relief to which Helen Davis was entitled. Thus the demurrers to the cross-bill were properly sustained.

The dispositive portions of the will consisted of Items One, Two, Three and Four, and appeared as follows:

"ITEM ONE: I give and bequeath all of my wearing apparel, jewelry, books, pictures, household furniture and furnishing, both useful and ornamental, any automobile I may own and all other objects of my personal use to my wife, Helen Wallace Davis, absolutely, if she be living at the time of my death. I hereby vest in my executors full power and authority to determine what objects of property are included in the foregoing description contained in this section of my will.

"ITEM TWO: I give, devise and bequeath the house I own located at 2202 Country Club Road, Decatur, Alabama, to my wife, Helen Wallace Davis, to be hers absolutely.

"ITEM THREE: *My said executors shall, as soon as possible after my death, divide the property constituting the residue of my estate into two shares. One of said shares for my wife shall consist of property* (including any undivided interests in property which my said executors may allocate to it) *having a value equivalent to one-fourth (¼) of the total value of said residue of my estate* after deduction from the value of my gross estate as calculated for estate tax purposes, the value of the property disposed of by Items One and Two hereof, (provided, however, that the value placed on Item Two hereof shall be $30,000.00) the amounts due from my estate for funeral expenses, for administration expenses, and for any other claims against my estate, and the amounts of any mortgages, liens, or other charges which may diminish the value of any assets included in the value of my gross estate. (In determining the value of the share set aside for my said wife, there shall be included the value of any policies of insurance on my life, made payable to her, and also the value of any other items of property having previously passed to her, or passing to her outside of the provisions in this Will which are held to be includable in my gross estate for federal estate tax purposes, and which will qualify as a marital deduction as provided in the United States Internal Revenue Code, as amended.) As soon as possible after my death my said executors shall turn over and deliver to my said wife the share referred to in this Item Three. The share referred to in this Item Three I hereby give, devise and bequeath unto my wife, Helen Wallace Davis, to be hers absolutely.

"ITEM FOUR: *The other of said shares shall consist of the remainder of said residue of my estate similarly calculated.* This share I give, devise and bequeath unto my three children, John D. Davis, Jr., Cassandra Elkins Davis and Darwin Davis Perkins in the following proportion; to-wit:

(1) To my daughter, Darwin Davis Perkins, I give, devise and bequeath Forty percent (40%) of said remainder of said residue.

(2) To my daughter, Cassandra Elkins Davis, I give, devise and bequeath Thirty percent (30%) of said remainder of said residue.

(3) To my son, John D. Davis, Jr., I give, devise and bequeath Thirty percent (30%) of said remainder of said residue.

"I hereby vest in my executors full power and authority to determine what property, real personal or mixed, or any undivided interest in property, which shall be apportioned to each child pursuant to the proportions or percentages set out above." (Emphasis supplied)

It will be noted that the first two items give the widow the residence and certain personal property and effects of the testator. The controversy centers on the effect of the gifts listed in Items Three and Four. One of appellant-respondent Helen Davis' basic contentions is that the Item Three gift to the widow is not part of the true residue, but rather a prior gift which should be set aside before the true residue is ascertained; the appellees-daughters, on the other hand, urge that the trial court's ruling that Items Three and Four constitute the residue is correct. Thus one of the questions presented is of what does the residue of the estate consist. Is it comprised of Item Four alone as urged by the widow, or, on the other hand, does it consist of both Items Three and Four, as contended by the daughters?

■ In answering these questions certain guidelines must be followed. The will should be considered as a whole, giving effect to each provision, if possible, to form one consistent scheme which effectuates the intention of the testator. Bell v. Killian, 266 Ala. 12, 93 So.2d 769. In considering the language used in effectuating the intent of the testator, the presumption is that, when an attorney drafts a will, legal terms are used in their legal sense, such presumption being conclusive in the absence of terms suggesting a different meaning. Morris v. Gilbert, 285 Ala. 179, 230 So.2d 237; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72. Words are considered to have been used throughout the will in the same sense. Ide v. Harris, 261 Ala. 484, 75 So.2d 129; Hanson v. First National Bank, 217 Ala. 426, 116 So. 127. See 4 Page on Wills (New Revised Treatise) § 30.21, at 141.

The language of Item Three states in part that the executors shall "divide the property constituting the *residue into two shares*. One of said shares for my wife shall consist of property . . . having a value equivalent to one-fourth (¼) of the total value of *said residue* . . . ." [Emphasis added.] Then, Item Four states in part *"The other of said shares* shall consist of the *remainder of said residue* of my estate *similarly calculated"*. [Emphasis added.]

■ In analyzing the language structure of Items Three and Four, the utilization of the words, i. e., "residue" and "said residue", and repeated connectives, i. e., "two shares", "One of said shares" and "The other of said shares", is persuasive that the over all scheme of the testator was to have these two items form the residue. To so construe these items would also be in keeping with the presumptions that legal terms are used in their legal sense unless other language indicates otherwise and that words used in one place in a will are considered throughout the will in the same sense. Therefore, this court holds that the testator intended that both Items Three and Four should comprise the residue.

Because the word "value" is used in the will pertaining to the widow's share, the appellant contends the gift to the widow is a pecuniary gift (occupying the status of a general legacy) which should be set aside before reaching the residue. Appellant's basis for this contention rests on In re Estate of Kantner, 50 N.J.Super. 582, 143 A.2d 243. There the court held a marital deduction gift (Article Three) to the wife to be a "pecuniary type formula" marital deduction rather than a "residue formula" one, and thus determined the bequest to the wife was a general legacy to be set aside before the residue was computed. Were the language formula the same in the case under submission as in *Kantner* in creating the marital deduction, it might be more persuasive. It should be noted that in

reaching the result it did the court in *Kantner* also pointed out:

> " . . . As though to eliminate the slightest doubt that the marital deduction gift was not intended to be of the residue formula type is the express direction in Article Fourth of the will that the trust there provided for should be constituted from the 'rest, residue and remainder of my property,' the conventional verbiage for reference to the residuary estate." (143 A.2d at 247.)

There is a complete lack of any suggestion from the language of the will of John D. Davis, Sr. that his residuary disposition should be limited to Item Four. See Casner, "Estate Planning—Marital Deduction Provisions of Trusts," 64 Harv.L.Rev. 582 (1951) and Smith, "Marital Deduction in Estate Planning," 32 Taxes 15 (1954) for discussion of language utilized in expressing either a pecuniary type formula or a residue type formula.

Appellant argues that the word "residue" should not be determinative of whether Item Three should be part of the residue of the estate, citing In re Jaret's Estate, 44 Misc. 2d 262, 253 N.Y.S.2d 599. The widow argues that the use of the word "residue" in and of itself is not determinative of the question, but merely creates a presumption which might be rebutted by other language showing a different meaning. However, in *Jaret*, the will as amended by several codicils contained four different descriptions of residuary estate ("rest, residue and remainder" of estate was used twice— in the third and fifth articles; "the residue" in the fourth article; and "the balance of my estate" in the ninth article). The language in *Jaret* certainly does show another meaning in that the last codicil directed the estate taxes be paid out of the "balance of my estate" and the only article to use such language was the ninth article. *Jaret* cannot be authoritative in the instant case where there is no such directive language nor even language to show a different meaning was intended when "residue" was used.

No reliance can be placed on In re Thaw's Estate, 414 Pa. 347, 200 A.2d 290, as to the question of whether a gift is a prior gift or part of the residue. These precise questions were not before that court.

It is clear the testator, in Item Three, created a formula for computing a marital deduction for the widow.

The question next for decision is whether or not a widow's share which qualifies as a marital deduction must bear a proportionate share of the estate tax when her share is located in the residue of the will.

Resolution of this question rests on the proper relationship or interplay of Tit. 51 § 449(1), Code of Alabama, 1940, and the marital deduction provision, 26 U.S.C.A. § 2056.

The pertinent portion of Tit. 51 § 449(1) is as follows:

> "Unless the decedent directs otherwise in his will, all estate taxes, whether state or federal, payable by reason of the death of decedent, shall be paid by the executor or other personal representative out of the estate property, and shall be a charge against the residue thereof * * *."

This section is apparently a codification of the general rule prevailing in some jurisdictions that, absent any specific directions from the testator, the residue shall bear any estate taxes generated. See Annotations, 142 A.L.R. 1137 and 37 A.L.R.2d 172, 176; 28 Am.Jur. § 473.

While this court has not had occasion to treat the impact of the marital deduction, its purpose evidently was:

> " . . . [T]o extend to married taxpayers in common law states the advantages of residents of community property jurisdictions by permitting a surviving spouse to acquire, free from the estate tax exaction, one-half of what is referred to as the adjusted gross estate of the deceased spouse." (United States v. Hiles, 318 F.2d 56, 59 (5th Cir.

1963), quoting United States v. Crosby, 257 F.2d 515 (5th Cir. 1958).)

See Estate of Whipple v. United States, 419 F.2d 494 (6th Cir. 1969). See also In re Burnett's Estate, 50 N.J.Super. 482, 142 A. 2d 695, 701–702, and Case v. Roebling, 42 N.J.Super. 545, 127 A.2d 409, 418–420 for detailed discussion of legislative history.

In substance, the Congressional purpose provided an equalization whereby citizens of non-community property states were placed on parity with citizens of community property states by allowing any portion of a decedent's estate up to one-half of the adjusted gross estate to pass to the surviving spouse without generating any estate tax. The beneficiaries of such a provision are both the estate, which has a lessened tax basis, and the surviving spouse.

■ Tit. 51 § 449(1) is silent as to the question of whether all who share in the residue should bear a pro rata portion of the estate tax and this court has never answered this question. A reasonable construction is that as a general rule all takers in the residue should share in the payment of estate taxes. This court so holds. However, consideration must be given as to whether or not an exception to this general rule should be created when a widow's share in the form of a marital deduction is part of the residue.

The special treatment accorded widows militates against this general rule of construction wherein all takers of the residue share in the payment of estate taxes. While there have been no decisions, either state or federal, construing the precise question before us in Alabama, there are decisions which evidence Alabama's special treatment of widows. In the recent case of Grant v. United States, 340 F. Supp. 182 (M.D.Ala., 1971), where there was no residuary clause in a will, it was held that a legacy to a widow, in lieu of dower and distributive share, was exempt from the general rules of abatement and preferred over all gratuitous legacies, whether specific or general, and that the widow's legacy is not chargeable with estate taxes until other assets, including those of realty, of the estate have been exhausted. The following is quoted from that case:

"Under Alabama law the burden of estate taxes is placed first upon the general estate as a charge against the residue thereof. Title 51, § 449, Code of Alabama (Recomp.1959 (sic)). If the residue is insufficient or, as in the present case, there is no residuary clause provided in a Will, Alabama law follows the traditional order of abatement—first general legacies, then specific legacies and devises. First National Bank of B'ham v. United States, D. C., 328 F.Supp. 1339 [28 AFTR 2d ¶ 147,-597] (1971); Austin v. Pepperman, 278 Ala. 551, 179 So.2d 299 (1965). However, Alabama has further established an exception to this rule as to the widow of the decedent, holding in Steele v. Steele's Administrator, 64 Ala. 438 (1879), that the widow, being a purchaser for value by relinquishing her right to dissent, is accorded a priority over all other legatees and devisees, coming immediately behind the claims of creditors. This priority is in line with weight of authority in most other states, see Anno. 2 A.L.R.2d 607, 610, and has been restated by Judge Pointer in the Northern District of Alabama, First Nat'l. Bank of B'ham v. United States, supra, citing Cox v. United States, [5th Cir., 421 F.2d 576] supra."

\* \* \* \* \* \*

". . . . The Steele case is controlling and by its use of the terms 'all other legatees *and devisees*' (emphasis added) does not distinguish the widow's priority merely to personal property. See Anno. 2 A.L.R.2d 607, 617."

\* \* \* \* \* \*

"Finally, the government contends that in the present case charging estate taxes against the widow's share will not diminish the amount available for her

support below the minimum amount prescribed had she taken her statutory rights. As Judge Pointer recites in note 9, page 1342, to his decision in First National Bank of B'ham v. United States, supra, such argument should fail. '[T]he theory of consideration is but a rationalization for the rule of construction and does not require the matching of benefits, as is indicated by cases in other states which hold that her (the widow's) priority should not be affected on account of her testamentary rights exceeding her dissent rights.' See Anno., 2 A.L.R.2d 607, 621."

In deciding the question of whether a widow's share upon dissent which qualifies as a marital deduction should share in the estate tax, the court, interpreting Alabama law, in Cox v. United States, 421 F.2d 576 (5th Cir. 1970), held that the wife's marital deduction should not so share. In stating the preferential treatment accorded widows, the court stated as follows: "It is unthinkable that Alabama which protects specific bequests from reduction due to the estate tax would not also protect the more favored marital share of the widow." (421 F.2d at 584).

In an early Alabama case this court expressed its concern for widows' rights in Perrine's Ex'rs. v. Perrine, 35 Ala. 644, through the following language of Justice R. W. Walker:

"Lord Coke said, that 'three things be favored in law—life, liberty and dower,' * * * It is not dower itself, however, but the purpose of dower— namely, the support of the widow—which the law favors. And statutes which have for their design the support of the widow out of the estate of the husband, must be regarded with the same favor, and administered with the same liberality extended to dower; and for the same reason that the widow is a favorite of the law." (35 Ala. 647).

Based upon the above considerations, this court holds that when a marital deduction gift, which does not exceed the limits of the marital deduction, is granted to a widow in a will not containing directions for estate tax payments, the general rule (that all takers in the residue are to share in the payment of estate taxes) does not apply. Instead, an exception, based upon a presumption that the marital deduction gift to the widow was given with the intent to maximize the tax advantages to the estate and to maximize the benefits to the widow within the limits of the gift and the marital deduction, is created wherein the widow's share is not burdened by such tax. Of course, if the intent of the testator is otherwise, the widow's share should bear its part of the estate taxes.

This test, which appears most sound to this court, is the one applied in the State of New Jersey. Both the Federal Third Circuit and the Supreme Court of New Jersey have treated questions similar to the one before us. In Dodd v. United States, 345 F.2d 715 (3rd Cir. 1965), the court in construing New Jersey's case law rule that estate taxes are payable out of the residue held this rule was inapplicable with the following rationale:

". . . . It would, indeed, be difficult in the usual case, where the proportion of the residue left to the wife does not exceed the allowable marital deduction, to attribute to the testator an intention that his estate should pay an increased estate tax and that his widow's distributable share should be reduced. In such cases there is no place for the operation of the canon of construction which imposed the burden of the estate tax on all who shared in the residue." (345 F.2d at 718).

Having rejected the case law construction that all who share in the residue should bear the burden of the estate tax, the court formulated the following rule:

". . . . Even if the wife and children were to be considered equally the intended beneficiaries of the testator's bounty, the balance would be overcome by the

consideration of reducing the total estate tax. In these circumstances, therefore, we may impute to the testator the intention that his estate and his wife alike should have the fullest benefit of the marital deduction. Moreover, even if it were thought that the testator's 'most probable' intention did not appear, and it became necessary to resort to a presumption, the presumption would be that the testator intended his estate to have the full benefit of the marital deduction. It follows therefore that the wife's share of the residue is not to be reduced by requiring it to bear any portion of the estate tax." (345 F.2d at 719).

Two years later the Supreme Court of New Jersey decided a similar question of whether or not a marital deduction gift to a spouse should be taxed when in the residue in Gesner v. Roberts, 48 N.J. 379, 225 A.2d 697. The facts showed the testator had left the residue in equal shares to his widow and his two children by a former marriage. The court stated the test used in this fact situation as follows:

". . . . Absent an express statement in the will, we should start with the assumption that the testator intended the maximum tax advantage for the estate and maximum benefit to the spouse within the limits of his gift to her. The plan of a will may of course suggest that a testator intended to depart from that approach." (225 A.2d at 698).

This court agrees that it is logical to assume a desire on the part of the testator to minimize his taxes while concurrently maximizing his bequest to the wife. Moreover, the over all scheme of the plan of the testator as expressed in Items Three and Four supports such an assumption.

The language of the Item Three bequest to the widow is as follows: The widow's share is to be ¼ of the "gross estate as calculated for estate tax purposes" less certain carefully enumerated items: (1) "property disposed of by Item One and Two" (2) "the amounts due from my estate, for administration expenses, and for any other claims against my gross estate, and the amounts of any mortgages, liens, or other charges which may diminish the value of any assets included in the value of my gross estate" (3) "any other items of property having previously passed to her, or passing outside of the provisions of this Will which will qualify as a marital deduction as provided in the United States Internal Revenue Code, as amended". From such a formula, the conclusion that the testator intended to create a marital deduction of ¼ of the adjusted gross estate is amply supported. This language has, in effect, tracked the Internal Revenue Code provisions for reaching the adjusted gross estate. See 26 U.S.C.A. §§ 2056 and 2053 for pertinent provisions.

After so providing for her share to be taken from the adjusted gross estate, the children's share is to be "the remainder of said residue of my estate similarly calculated". Darwin Perkins was to receive "Forty percent (40%) of said remainder of said residue"; Cassandra Dowling was to receive "Thirty percent (30%) of said remainder of said residue" and John Davis, Jr. was to receive the other "Thirty percent (30%) of said remainder of said residue". The over all scheme of the testator is clear that the widow was to take a ¼ of the adjusted gross estate and then the children were to divide what was left of the residue in the above percentages.

Appellees contend that the decedent intended to place the widow and the children in parity with respect to estate taxes. It is argued that the primary intent was to treat the widow and children equally by giving the widow one-fourth and the children three-fourths, imposing taxes accordingly. This contention is not supported by the language of the will, which evidences the decedent's intent. While true there are four takers in the residue, this would appear fortuitous rather than an indication that the decedent left a plan whereby each should share equally in the residue. A reading of these Items, Three and Four,

indicates a contrary intent as previously indicated. The over all scheme exhibited therein was for two separate and independent shares to be set up. One share was created in Item Three to the widow in a formula equal to ¼ of the adjusted gross estate. The other share was left in Item Four to the children in percentages which show an intent that the children were to take their portion, not from the same amount from which the widow's share was computed, but from that portion which was left after the share to the widow designated as the "remainder of the said residue", with percentages of 40% to Darwin Perkins, 30% to Cassandra Dowling and 30% to John Davis, Jr.

 The further contention that the testator by designating the wife to share in the residue presumably knew the law of this state required it to share in the estate taxes is not well taken. The basis for this contention is founded on two theories, that the rule expressed by the statute required all takers of the residue to share in estate taxes and that a section of the Treasury Regulations requires the same result. Having treated the first of the theories, the remaining one is that Treas.Reg. 26 C.F.R. 20.2056(b)–4(c) requires the widow's share to bear part of the estate tax burden. The Regulation states in pertinent part as follows:

"(4) . . . [I]f the residuary estate, or a portion of it is bequeathed to the surviving spouse, and by the local law the Federal estate tax is payable out of the residuary estate, the value of the bequest, for the purpose of the marital deduction, may not exceed its value as reduced by the Federal estate tax. * * *"

Were this jurisdiction's rule such that all the takers, including the widow, of the residue are burdened with estate taxes, this court might feel bound to require the widow's share to bear its portion of estate taxes. However, having decided that an exception to the general rule is applicable where it appears that the widow's gift qualifies as a marital deduction, this court is of the opinion that the regulation is not determinative. It is well settled that states determine what portion of an estate bears the burden of the federal estate tax. Riggs v. Del Drago, 317 U.S. 95, 63 S.Ct. 109, 87 L.Ed. 106. In passing it is also noted that this Regulation has found disfavor in at least one Federal decision. Dodd v. United States, 223 F.Supp. 785 (D.N.J. 1963). There, the court determined the Regulation's objective of taxing the marital deduction was rejected as being contrary to the Congressional intent in enacting the marital deduction, the court using the following language:

"With respect to the section of the Treasury Regulations [26 C.F.R. 20.2056 (b)–4(c)] on which the Government bases its contention in these motions, if it be construed as requiring the share of the surviving spouse of the testator in his residuary estate to bear any portion of the Federal estate tax, then the Regulation is inconsistent with the statute itself, as construed in the light of its legislative history and the Congressional objective in adopting it, and with the rule requiring the impact of tax payments be governed by State law. If, on the other hand, the language . . . is not to be so construed, then it affords no basis for the support of the Government's contention in the present case." (223 F.Supp. at 789–790.)

Based on these considerations, this court is of the opinion that this contention is not persuasive.

 Finally, appellee Darwin Perkins apparently contends that testator intended the gift to the widow to be calculated as ¼ of an amount which is to be determined after estate taxes had been subtracted from the "residuary estate", basing this contention on the language "other claims against my estate". While this might be a possible

**324**

interpretation of the terms of the Item Three provision to the widow, another meaning is more plausible, when construed in light of the language used as expressing the intent of the testator. In setting up the provision to the widow, the testator carefully stated the starting point for the widow's share as the "total value of said residue after [certain] deduction[s] from the value of my gross estate as calculated for estate tax purposes", rather than what appellee terms the "residuary estate". From the "gross estate" certain items are deducted. These items carefully track the deductions allowed in reaching the adjusted gross estate (the artificial devise created for determining the valuation of the marital deduction). See U.S.C.A. § 2056 and § 2053 for method and particular deductions. Of these, "claims against the estate" is a particular deduction, and does not include the estate taxes. 26 U.S.C.A. § 2053(a)(3). Thus, the phrase "other claims against my estate" is construed in connection with ascertaining the amount (adjusted gross estate) which is to be the basis from which to compute the marital deduction rather than as a basis from which to say that the testator intended to burden the provision to the widow with estate taxes.

The decree of the lower court is due to be reversed and the cause remanded with instructions that a decree be entered by the lower court in accordance with this opinion.

Reversed and remanded with instructions.

MERRILL, HARWOOD, MADDOX and McCALL, JJ., concur.

COLEMAN, J., dissents.

SOMERVILLE, J., recuses himself.

BLOODWORTH, J., not sitting.