## Ellis Estate

*Frank G. Cooper*, for accountants.

*Samuel Evans Ewing, 3rd, Edward M. David*, and *J. Peter Williams*, for charitable beneficiaries.

*Robert C. Grasberger, William H. Lamb*, and *Charles F. Mayer*, for heirs of Adele S. Ellis.

O'DONNELL, *J.*, December 30, 1977—The account of Henry J. Preston, trustee under the will of Frank H. Ellis, III, and Philip Cohen, successor trustee under the will of Frank H. Ellis, III, as stated by Henry A. Preston, Patricia C. Preston, Thomas Collins and Vincent F. Garrity, Jr., executors of the estate of Henry J. Preston, deceased, from August 4, 1967, to September 8, 1975, and as stated by Philip Cohen, successor trustee under the will of Frank H. Ellis, III, from September 8, 1975, to May 23, 1976, was presented to the court for audit, confirmation and distribution of ascertained balances on February 3, 1977, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said estate appears in the record.

In their statement of proposed distribution accountants note that there may be additional taxes and costs which may be found to be due from the funds which are the subject of this accounting. Accordingly, accountants request the court to award from principal a reserve fund of $65,000 to cover any such taxes and costs, and such award is made below. The said reserve is to be further accounted for before this court by Philip Cohen, successor trustee, unless the requirement of such an accounting is waived by the parties in interest.

• • •

Decedent here, at the time of writing his will, held a limited power of appointment over assets valued at more than $1,200,000 under the will of his grandmother, Mary A. Ellis, and another over assets valued at more than $260,000 under the will of his grandfather, Frank H. Ellis.

He died without issue, but was survived by his wife, Adele S. Ellis.

Confined to the language needed for present purposes, that will provided as follows:

"FOURTH: I order and direct that all property (or interests of any kind in any property) over which I have (or will have at the time of my death) power of appointment shall be considered part of, and distributed in the same manner as my residuary estate.

"FIFTH: (A) If my wife, ADELE S. ELLIS survives me, I give to my Trustees, IN TRUST, an amount equal to fifty percent (50%) of the value of my adjusted gross estate (herein called Share No. 1) as finally determined for Federal estate tax purposes, less the aggregate amount of marital deductions, if any, allowed for such purposes by reason of property or interests in property passing or which have passed to my wife otherwise than by the terms of this article of my will.

"My Executor shall assign, convey and distribute to the Trustees of said trust the cash, securities and other property, including real estate and interests therein, which shall constitute said bequest. The cash, securities and other property so distributed shall be selected in such manner as to have an aggregate fair market value fairly representative of the appreciation or depreciation in the value to the date or dates of each distribution of all property then available for distribution.

"...

"No asset or proceeds of any asset shall be included in the trust as to which a marital deduction is not allowable if included. Said bequest shall abate to the extent that it cannot be satisfied in the manner hereinabove provided.

"The Executors shall have the sole power and

discretion to pay the amount of Share No. 1, wholly or partly, in cash or in kind; further that there shall not be included in Share No. 1 any asset or the proceeds of any asset (a) which does not qualify for the marital deduction for Federal estate tax purposes,

" . . .

"(B) Said trust for the benefit of my wife, is herein designated and shall be held, administered and disposed of as follows:

"(C) I give such Share No. 1 to my Trustees, IN TRUST and direct them to pay the net income therefrom to my wife ADELE S. ELLIS, in quarterly installments during her lifetime. In addition, there shall be paid to my said wife during her lifetime out of the principal of Share No. 1, such amount or amounts as she, my said wife, Adele S. Ellis, may request at any time and from time to time without restriction as to frequency or amount of such payments of principal out of Share No. 1. I hereby grant to my said wife, Adele S. Ellis, alone and in all events, the power to appoint by express reference thereto in her will the entire remaining principal of Share No. 1 free of this trust, to her estate or in favor of any other person or persons, but in default of such appointment by my said wife, by express reference thereto in her will, the principal of Share No. 1 remaining at the time of the death of my wife, Adele S. Ellis, shall be disposed of in the same manner as Share No. 2.

"SIXTH: The balance of my residuary estate, after deducting the amount allocated to Share No. 1 shall be known as Share No. 2 of my estate. I give such Share No. 2 to my Trustees, IN TRUST, to hold and distribute as follows:

"I. My Trustees shall pay the income from this

trust Share No. 2 to my wife, ADELE S. ELLIS, in quarterly installments during her lifetime.

"II. Upon the death of my said wife ADELE S. ELLIS, or upon my death, if she has predeceased me, the principal of this trust Share No. 2 shall be paid and distributed free of all trust, as follows:

"(a) One-half thereof to THE CHURCH FARM SCHOOL,

" . . .

"(b) The other one-half thereof to the NEW BOLTON CENTER OF THE SCHOOL OF VETERINARY MEDICINE (A division of the University of Pennsylvania)

" . . .

"SEVENTH: If my wife, ADELE S. ELLIS, predeceases me, I give the residue of my estate, including Share No. 1 and Share No. 2 to my Trustees, IN TRUST, to hold and dispose of such residuary estate, including Share No. 1 and Share No. 2, in the manner hereinabove provided for the handling and disposition of Share No. 2 of my residuary estate."

The question to be resolved here is what happens to the assets subject to the powers of appointment conferred upon decedent by the wills of his grandparents? Are they distributable equally to shares nos. 1 and 2 or to share no. 2 alone?

It is apparent that the scrivener was aware of the pecuniary or "amounts" formula method in setting aside those assets eligible for the maximum marital deduction for Federal estate tax purpose. It is equally apparent that he was aware of Rev. Proc. 64-19, a regulation of the Internal Revenue Service to assure that at distribution the assets going to the widow still equal the value ascribed to them when the marital deduction was taken.

But in attempting to employ all the devices available to him, the scrivener succeeded in drafting a will with a certain lack of clarity. From this comes the contest.

On their part, the heirs point to the scheme of distribution provided for in the will and claim that after the specific bequests share no. 1 going to Adele and share no. 2 going to the charities form the residuary estate, thusly sharing with the charities the assets appointed in paragraph fourth of the will.

On their part, the charities point to the positive language of the testament in paragraph fifth (A) that share no. 1 shall contain no asset "which does not qualify for the marital deduction" and, of course, assets subject to a limited power of appointment do not so qualify.

We must adopt the construction of the will advanced by the charities not only because of the positive language to which they allude, but also because the entire scheme of distribution, as we understand it, does not really treat the marital deduction share as residue.

A look at the will from its four corners discloses the following: first, that debts and expenses are to be paid; second, tangible personal property goes to his wife, if she survives; if not it goes to his *residuary estate*[1] (the charities); third comes a pecuniary legacy to a former employe; fourth, if the wife survives, "an amount equal to fifty percent (50%) of the value of my adjusted gross estate"[2]

1. Emphasis supplied.

2. The very method recommended by Professor Casner in Estate Planning—Marital Deduction, Provision of Trusts, 64 Harv. L.Rev. 582 (1951), and discussed in Althouse Estate, 404 Pa. 412, 172 A. 2d 146 (1961).

goes to her. Such a gift is "a general legacy of a definite dollar sum, albeit determinable by formula." In re Estate of Kantner, 50 N.J. Super. 582, 143 A. 2d 243 (1958). It is only after all that is done, that the will begins to speak of residue.

To avoid this result the Adele Ellis heirs are compelled to argue that, even though the testator used the words, "an amount equal to" for his formula, the necessary effect of Rev. Proc. 64-19 and will language in accord therewith is to wipe out the use of pecuniary formulas and replace them all with fractional share formulas, and thusly put all formula assets into residue whether decedent intended that result or not. We hold that language used by a testator to take into account the requirements of Rev. Proc. 64-19 language simply provides that the "amount equal to" formula may have to be recomputed at distribution time to take full advantage of the marital deduction.

It must be noted that the testator did not give his wife 50 percent of residue. He gave her 50 percent of "my adjusted gross estate."

The only language in the entire will which would even suggest that the testator considered share no. 1 as part of his residuary estate is in "SIXTH: The balance of my residuary estate, after deducting the amount allocated to Share No. 1, shall be known as Share No. 2 of my estate." We read this to mean that after share no. 1 is deducted from the whole estate, the balance is share no. 2, the true residuary estate.

Since, in our view, the residuary estate is share no. 2, it follows that the assets subject to the powers of appointment, when "considered part of, and distributed in the same manner as my residuary estate," were to be considered as part of and distributed as share no. 2.

• • •

## ORDER

And now, December 30, 1977, the adjudication is confirmed nisi.